**James NOLAN, Wayne D. Hubbard, Jade L. Harris, John Sager Beltram, Richard H. Ludka, and John W. Mick, on Behalf of Themselves and on Behalf of Other Employees of the Defendant Similarly Situated, Petitioners,**

v.

**SEA AIRMOTIVE, INC., Respondent.**

**No. 5177.**

Supreme Court of Alaska.

May 8, 1981.

---

7. See n. 3 supra.

Charles G. Evans, Smith & Gruening, Anchorage, for petitioners.

Richard L. Waller, Hagans, Brown & Gibbs, Anchorage, for respondent.

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

## OPINION

BURKE, Justice.

This case presents the question of whether the Legislature can properly prescribe a different form of class action procedure than that set out in Rule 23, Alaska R.Civ.P.[1]  We conclude that Rule 23 con-

---

1. Rule 23 provides as follows:

(a) *Prerequisites to a Class Action.*  One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) *Class Actions Maintainable.*  An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) The prosecution of separate actions by or against individual members of the class would create a risk of

(A) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

trols over the procedure contained in AS 23.10.130(b).[2]

James Nolan began the proceedings herein by filing a complaint in superior court in April 1976, on his own behalf and on behalf of other similarly situated employees of Sea Airmotive. Nolan alleged that Sea Airmotive employed its aircraft mechanics for

> (B) Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
>
> (2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
>
> (3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the finding include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.
>
> (c) *Determination by Order Whether Class Action to Be Maintained—Notice—Judgment—Actions Conducted Partially as Class Actions.*
>
> (1) As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits.
>
> (2) In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude him from the class if he so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if he desires, enter an appearance through his counsel.
>
> (3) The judgment in an action maintained as a class action under subdivision (b)(1) or (b)(2), whether or not favorable to the class, shall include and describe those whom the court finds to be members of the class. The judgment in an action maintained as a class action under subdivision (b)(3), whether or not favorable to the class, shall include and specify or describe those to whom the notice provided in subdivision (c)(2) was directed, and who have not requested exclusion, and whom the court finds to be members of the class.
>
> (4) When appropriate (A) an action may be brought or maintained as a class action with respect to particular issues, or (B) a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly.
>
> (d) *Orders in Conduct of Actions.* In the conduct of actions to which this rule applies, the court may make appropriate orders: (1) determining the course of proceedings or prescribing measures to prevent undue repetition or complication in the presentation of evidence or argument; (2) requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action; (3) imposing conditions on the representative parties or on intervenors; (4) requiring that the pleadings be amended to eliminate therefrom allegations as to representation of absent persons, and that the action proceed accordingly; (5) dealing with similar procedural matters. The orders may be combined with an order under Rule 16, and may be altered or amended as may be desirable from time to time.
>
> (e) *Dismissal or Compromise.* A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.

2. AS 23.10.130(b) provides:

> For the purposes of this section, an action is considered to be started on the date when the complaint is filed. If it is a collective or class action under § 110 of this chapter, it is considered to be started as to an individual claimant on the date when the complaint is filed if he is specifically named as a party plaintiff or, if not named on the date of filing, on the subsequent date on which his name is added as a party plaintiff.

work weeks in excess of forty hours without compensating them for these hours at one and a half times their regular rate of pay, a violation of the Alaska Wage and Hour Act (the "Alaska Act"), AS 23.10.050.-150.

Sea Airmotive denied the pertinent allegations of the complaint and interposed numerous affirmative defenses, including the statute of limitations and various objections to the maintenance of the suit as a class action.

As discovery proceeded, additional named plaintiffs were added to the action. The plaintiffs then moved for certification of the proceedings as a class action, pursuant to Civil Rule 23(c)(1),[3] and Sea Airmotive stated its non-opposition to that certification. Due to the plaintiffs' delay in amending the definition of the proposed class, the court did not certify the class until May 22, 1979. The amendment reflected that Sea Airmotive changed the employment practices at issue after December 31, 1977, and

therefore the class did not include employees working solely after that date.

In January 1980, Sea Airmotive sought dismissal of the claims of the unnamed class members, arguing that their claims were barred by the statute of limitations contained in AS 23.10.130.[4] The plaintiffs opposed the dismissal and also sought approval of notice to the class, pursuant to Civil Rule 23(c)(2).[5] The court considered both motions at the same hearing, dismissed the claims of the unnamed class members, and denied the motion to send notice to the class.

The plaintiffs thereupon sought review of the court's interlocutory decision in this court, arguing that the trial court's decision effectively terminated the action with respect to the unnamed class members, that the question of the applicability of Rule 23 to Wage and Hour Act claims is an important one, and that the delay caused by a separate trial and resulting appeal would hamper any later effort to send notice to the unnamed class members. These considerations prompted our decision to grant review.[6] Former Rules 23(c), 24(a)(1), 24(a)(2), Alaska R.App.P.[7]

---

3. See note 1 *supra.*

4. AS 23.10.130(a) provides:
   An action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages under §§ 50–150 of this chapter must be started within two years after the cause of action accrues; otherwise the action is forever barred.
   AS 23.10.130(b) is quoted in note 2 *supra.*

5. See note 1 *supra.*

6. While the petition for review was pending in this court, the named plaintiffs settled their claims against Sea Airmotive, specifically reserving the right to continue prosecution of the class suit. Sea Airmotive agreed not to seek dismissal of the petition based on lack of standing of the plaintiffs. We note that in similar circumstances the United States Supreme Court has held that once certified as a class action a suit does not become moot as a result of the lack of a live controversy between the named plaintiff and the defendant. *United States Parole Commission v. Geraghty,* 445 U.S. 388, 397–407, 100 S.Ct. 1202, 1208–1214, 63 L.Ed.2d 479, 491–97 (1980); *Sosna v. Iowa,* 419 U.S. 393, 397–403, 95 S.Ct. 553, 556–559, 42 L.Ed.2d 532, 539–43 (1975).

7. Former Appellate Rule 23 provides in pertinent part:
   An aggrieved party, including the State of Alaska, may petition this court as set forth in Rule 24 to be permitted to review any order or decision of the superior court, not otherwise appealable under Rule 5, in any action or proceeding, civil or criminal, as follows:

   . . . . .

   (c) From any order affecting a substantial right in an action or proceeding which either (1) in effect terminates the proceeding or action and prevents a final judgment therein; or (2) discontinues the action; or (3) grants a new trial.
   Former Appellate Rule 24(a) provides in pertinent part:
   A review is not a matter of right, but will be granted only: (1) where the order or decision sought to be reviewed is of such substance and importance as to justify deviation from the normal appellate procedure by way of appeal and to require the immediate attention of this court; or (2) where the sound policy behind the general rule of requiring appeals to be taken only from final judgments is outweighed by the claim of the individual case that justice demands a present and immediate review of a particular non-appealable order or decision; . . . .

## I

Plaintiffs' first argument is based on the Wage and Hour Act itself, and asserts that, unlike the federal Fair Labor Standards Act ("FLSA" or "Federal Act"), the Alaska Act should not be interpreted to require the naming of a class member as a party to the action in order to commence the action on behalf of that person. Treatment of this contention requires review of the origins of the Alaska Act.

As we recently noted, the Alaska Act, "enacted in 1959 (ch. 171 SLA 1959), has similar purposes to the federal act and is based upon it." *Webster v. Bechtel, Inc.,* 621 P.2d 890, 895 (Alaska 1980) (citation omitted). Prior to its amendment in 1947 by the Portal-to-Portal Act,[8] the Federal Act allowed three types of private enforcement suits:

(1) actions in which there are one or more named plaintiffs who are parties to the action; (2) actions in which one or more employees seek recovery for themselves and other employees similarly situated; and (3) actions in which suit is brought by an outside agent or representative who sues for the benefit of all employees of a class similarly situated.

Rahl, *The Class Action Device and Employee Suits Under the Fair Labor Standards Act,* 37 Ill.L.Rev. 119, 122 (1942) (footnote omitted). In the Portal-to-Portal Act amendments, Congress deleted the provision for the agent or representative action, and required as a prerequisite to the action on behalf of those similarly situated, that those wishing to sue file their written con-

sent with the court. 61 Stat. 84, 87, 29 U.S.C. § 216(b). Congress further provided that the action was not deemed to commence for purposes of the statute of limitations on behalf of a person not named in the complaint until their written consent was filed. 61 Stat. 84, 88, 29 U.S.C. § 256.

In the Alaska Act, the legislature plainly determined to revive the agent or representative action, where the employee "individually designate[s] in writing an agent or representative to maintain an action for him." AS 23.10.110(b).[9] No similar condition is applied to the action brought on behalf of those similarly situated. But while the Alaska Act does not require that an individual file a written consent to be a party to a class action, the legislature did substantially adopt the federal provisions concerning the need to be specifically named in order to commence the action for purposes of the statute of limitations. AS 23.10.130(b).

Based on these differences between the two statutes, the plaintiffs contend that the legislature's failure to require written consents from class action plaintiffs means that the requirement of naming plaintiffs for purposes of the statute of limitation should apply only to agent or representative actions. In support of this argument, plaintiffs offer the wording of the Alaska Act as it appeared in the session laws. They properly note that the revisor of statutes made several changes during the codification process, including the addition of a crucial "not" in the last sentence of AS 23.10.-130(b).[10] In response, Sea Airmotive points

---

**8.** Portal-to-Portal Act of 1947, ch. 52, 61 Stat. 84, 29 U.S.C. §§ 216(b), 251–262.

**9.** AS 23.10.110(b) provides as follows:
An action to recover from the employer the wages and damages for which he is liable may be maintained in a competent court by an employee for himself and other employees similarly situated, or an employee may individually designate in writing an agent or representative to maintain an action for him. The consent shall be filed in the court in which the action is brought. At the request of a person paid less than the amount to which he is entitled under §§ 50–150 of this chapter, the commissioner may take an as-

signment in trust for the employee of the full amount to which he is entitled under this section and may bring any legal action necessary to collect the claim.

**10.** Section 12 of chapter 171, SLA 1959 provided in pertinent part:
in the case of a collective or class action instituted under § 9(c) of this Act, it shall be considered to be commenced as to any individual claimant on the date when the complaint is filed, if he is specifically named as a party plaintiff, or if his name does so appear, on the subsequent date on which his name is added as a party plaintiff.

out that in 1963 the legislature repealed existing statutes and reenacted their codified versions, and gave the revisor of statutes the duty to correct errors without changing the meaning of laws. *See* ch. 1, SLA 1963; AS 1.05. While we might have some doubt as to the wisdom of construing a statute to have been substantively revised in this fashion, in this case the legislative history of the Alaska Act discloses that the revisions made by the revisor were properly done to correct typographical errors and grammatical construction without changing the substantive meaning of the law as passed by the legislature.[11] We therefore reject plaintiffs' argument and construe AS 23.10.130(b) to pertain to class actions, as the legislature plainly intended.

## II

Plaintiffs' next contention is that the legislature's attempt to define the commencement of a wage and hour class action is invalid as a procedural enactment that conflicts with Civil Rule 23.[12] The argument rests on the Alaska Constitution's provision giving this court responsibility for "rules governing practice and procedure in civil and criminal cases in all courts," and allowing the legislature to change these rules by "two-thirds vote of the members elected to each house." Alaska Const. art. IV, § 15.

For the court to invalidate a statute as "procedural," requires us to find, first, that the statute indeed conflicts with a rule promulgated by the court, *Matanuska Maid, Inc. v. State*, 620 P.2d 182, 188 (Alaska 1980), second, that the main subject of the statute is not substantive with only an incidental effect on procedure, *Winegardner v. Greater Anchorage Area Borough*, 534 P.2d 541, 547 (Alaska 1975), *Channel Flying, Inc. v. Bernhardt*, 451 P.2d 570, 576 (Alaska 1969), and finally, that the legislature has not changed the rule with the stated intention of doing so, *Leege v. Martin*, 379 P.2d 447, 451 (Alaska 1963). Civil Rule 93 reflects this scheme by providing:

> These rules are promulgated pursuant to constitutional authority granting rule making power to the supreme court, and to the extent that they are inconsistent with any procedural provisions of any statute not enacted for the specific purpose of changing a rule, shall supersede such statute to the extent of such inconsistency.

Here, the claimed conflict is between AS 23.10.130(b)'s requirement that a person be specifically named as a party for the statute of limitations to be tolled as to them, and existing interpretations of Rule 23 that the filing of a class action suit tolls the statute as to all members of the class. We discuss

---

The codified version concludes, "it is considered to be started as to an individual claimant on the date when the complaint is filed if he is specifically named as a party plaintiff or, if *not named* on the date of filing, on the subsequent date on which his name is added as a party plaintiff." (Emphasis added.)

11. The version of the Alaska Act originally introduced into the legislature read "if his name did not so appear," and this language was carried forward in the first committee substitute for the bill. H.B. 101, § 13, 1st Leg., 1st Sess. (1959); C.S.H.B. 101, § 13, 1st Leg., 1st Sess. (1959).

In the second committee substitute, and in the version of the Act finally passed by the Legislature, the phrase read "if his name does so appear." 2d C.S.H.B. 101, § 12, 1st Leg., 1st Sess. (1959). Since the quoted phrase makes no sense in the context of the sentence if the "not" is omitted, we conclude that the revisor properly restored that word to the phrase upon codification. This interpretation is of course

strengthened by the similar language of the FLSA. *See* 29 U.S.C. § 256.

12. In a supplemental brief, plaintiffs argue that our recent decision in *Webster v. Bechtel, Inc.*, 621 P.2d 890 (Alaska 1980), shows that we have already adopted this view. In *Webster*, we held that the FLSA did not preempt the Alaska Act and we analyzed purported conflicts between the two statutes to determine whether preemption should be found. In doing so, we accepted at face value defendant Bechtel's argument that certain conflicts were present. Thus, in listing differences between the two statutes we stated that the Alaska Act is enforced by "opt-out" class actions pursuant to Civil Rule 23. *Id.* at 895–96, 902–03. Since we gave no consideration in *Webster* to whether Rule 23 should indeed be applied, and the opinion does not even mention AS 23.10.130(b), we decline to give *Webster* controlling significance.

below whether such a conflict exists, and whether the rule or the statute should control.

### A

The effect of filing a civil suit denominated as a class action on the running of the statute of limitations for members of the purported class was discussed by the United States Supreme Court in *American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). The Court's discussion is especially persuasive in light of the identity between our Civil Rule 23 and the corresponding federal rule. In *American Pipe* the Court reviewed the history of Rule 23, pointing out that prior to the 1966 revision of the federal rule,[13] when a suit was brought as a class action based on common questions of law or fact among the members of the class[14] " 'it was merely an invitation to joinder—an invitation to become a fellow traveler in the litigation, which might or might not be accepted.' " *Id.* at 546, 94 S.Ct. at 763, 38 L.Ed.2d at 723, *quoting* 3B J. Moore, *supra* note 14 at 23–2603. Those who accepted the invitation gained or lost by any judgment, but absent parties were not affected. *See generally* Simeone, *Procedural Problems of Class Suits*, 60 Mich.L.Rev. 905, 919–20 (1962). Under this regime it was uncertain whether the statute of limitations was tolled for the members of the class when the class action was filed, as some decisions looked to the representative nature of the action to allow tolling, and

others viewed the action as a joinder device and required each individual to satisfy the statute of limitations. *American Pipe*, 414 U.S. at 549–50, 94 S.Ct. at 764–765, 38 L.Ed.2d at 724; Simeone, *supra*, at 938–39.

Present Rule 23 was revised specifically to end these uncertainties. As the Court in *American Pipe* pointed out:

Under the present Rule, a determination whether an action shall be maintained as a class action is made by the court "[a]s soon as practicable after the commencement of an action brought as a class action...." Rule 23(c)(1). Once it is determined that the action may be maintained as a class action under subdivision (b)(3), the court is mandated to direct to members of the class "the best notice practicable under the circumstances" advising them that they may be excluded from the class if they so request, that they will be bound by the judgment, whether favorable or not if they do not request exclusion, and that any member who does not request exclusion may enter an appearance in the case. Rule 23(c)(2). Finally, the present Rule provides that in Rule 23(b)(3) actions the judgment shall include all those found to be members of the class who have received notice and who have not requested exclusion. Rule 23(c)(3).

414 U.S. at 547–49, 94 S.Ct. at 763–764, 38 L.Ed.2d at 723–24 (footnotes omitted).

■ In light of these revisions,[15] the United States Supreme Court reasoned that

---

**13.** Alaska's Civil Rule 23 was not revised to conform to the 1966 federal revisions until November 15, 1976. While this suit was filed at a time when former Civil Rule 23 was in effect, the new rule was properly applied to it by the trial court inasmuch as no questions of class action procedure were presented to the court until after November 15, 1976, and, under Civil Rule 98, newly promulgated rules govern "so far as just and practicable all proceedings then pending."

**14.** *See* former Civil Rule 23(a)(3) (class action permissible where "character of the right sought to be enforced ... is several, and there is a common question of law or fact affecting the several rights and a common relief is sought."). Such suits were known as "spuri-

ous" class actions under the old rule, 3B J. Moore, Federal Practice ¶ 23.10[1], at 23–2601 to 2602 (2d ed. 1978), and encompass class suits brought under the FLSA or the Alaska Act.

A somewhat similar concept is carried forward in the revised rule in subsection (b)(3), where the court finds that common questions of law or fact predominate over individual questions, and that a class action is superior to other methods for fair and efficient adjudication.

**15.** The *American Pipe* court stated:

Under present Rule 23, however, the difficulties and potential for unfairness which, in part, convinced some courts to require individualized satisfaction of the statute of limi-

"the commencement of the action satisfied the purpose of the limitation provision as to all those who might subsequently participate in the suit as well as for the named plaintiffs," since a contrary holding

> would frustrate the principal function of a class suit, because then the sole means by which members of the class could assure their participation in the judgment if notice of the class suit did not reach them until after the running of the limitation period would be to file earlier individual motions to join or intervene as parties—precisely the multiplicity of activity which Rule 23 was designed to avoid in those cases where a class action is found "superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3).

*Id.* at 551, 94 S.Ct. at 765, 38 L.Ed.2d at 725.[16] We find the high court's reasoning persuasive and hold that the filing of a class action under Civil Rule 23 ordinarily tolls the statute of limitations as to all members of the class, whether or not named in the complaint.

### B

■ This conclusion results in a conflict between the effect of Civil Rule 23 as we have interpreted it, and AS 23.10.130(b), which requires members of a Wage and Hour Act class to be specifically named in order to toll the statute of limitations for

tations by each member of the class, have been eliminated, and there remain no conceptual or practical obstacles in the path of holding that the filing of a timely class action complaint commences the action for all members of the class as subsequently determined. Whatever the merit in the conclusion that one seeking to join a class after the running of the statutory period asserts a "separate cause of action" which must individually meet the timeliness requirements, *Athas v. Day*, 161 F.Supp. 916, 919 ([D.C.] Colo.1958), such a concept is simply inconsistent with Rule 23 as presently drafted. A federal class action is no longer "an invitation to joinder" but a truly representative suit designed to avoid, rather than encourage, unnecessary filing of repetitious papers and motions. *Id.* at 550, 94 S.Ct. at 764, 38 L.Ed.2d at 724–25 (footnote omitted).

purposes of that statute. We therefore proceed to determine whether the statute is procedural, and thus constitutionally invalid unless enacted for the purpose of changing the rule, or substantive.

At the outset, it is useful to elaborate on what is meant by "procedural" and "substantive." The terms are a form of shorthand for the concept that under Alaska's constitution, the supreme court is responsible for "practice and procedure in civil and criminal cases in all courts." Alaska Const. art. IV, § 15. In determining where the court's power ends and the legislature's begins, we have noted that "substantive law creates, defines and regulates rights, while procedural law prescribes the method of enforcing the rights." *Ware v. City of Anchorage*, 439 P.2d 793, 794 (Alaska 1968) (footnote omitted). But while this distinction claims venerable origins,[17] it has been recognized that the definition falls far short of drawing an unequivocal line. *See* Joiner & Miller, *supra* note 17, at 635. Decisions on the method of enforcing a right often affect substantive rights, and the regulation of substantive rights may have an impact upon judicial procedure.

As a result, an important part of the inquiry should be an examination of whether the rule or statute under scrutiny is more closely related to the concerns that led to the establishment of judicial rule making

16. The court also concluded that the statute of limitations was tolled as to those members of the class who "did not rely upon the commencement of the class action (or who were even unaware that such a suit existed)." *Id.*

   Tolling has also been adopted by the Commissioners on Uniform State Laws in their proposed uniform rules for class actions. Uniform Class Actions [Act] [Rule] § 18, 12 West's U.Laws Ann. 20, 32 (Supp.1981).

17. In *Poyser v. Minors*, 7 Q.B.D. 329, 333–34 (1881), Lush, L. J., wrote that practice and procedure denote the "mode of proceeding by which a legal right is enforced, as distinguished from the law which gives or defines the right, and which by means of the proceeding the Court is to administer the machinery as distinguished from its product." *See* Joiner & Miller, *Rules of Practice and Procedure: A Study of Judicial Rule Making*, 55 Mich.L.Rev. 623, 630–32 (1957).

power, or to matters of public policy properly within the sphere of elected representatives. In *Leege v. Martin*, 379 P.2d 447, 450 (Alaska 1963), we noted the reasons for "placing in the judicial branch of government, rather than in the legislature, the initial and primary responsibility for making rules of court practice and procedure." We stated:

> The administration of justice is the day to day business of the courts; they are better equipped than a legislature to know the most effective and efficient methods of conducting that business. The field of judicial procedure should not remain static; there is need for regular review and revision of basic rules "to keep them abreast of new trends and applicable generally to the substantive law as it develops." The legislative process does not readily adapt itself to that end. Unfamiliar with court practice, legislatures are not in a position to recognize the need for procedural revision when it arises. When the need is called to their attention, they lack the experience and expertness necessary to solve it. As a result, necessary changes come slowly, and judicial procedure becomes undesirably rigid. Courts, however, are primarily concerned with providing the most effective and efficient system for carrying out the administration of justice. This concern, and a close familiarity with rules of practice through daily use, puts the courts in a position to recognize immediately the need for procedural revision and to act quickly in bringing it about. Consequently, the courts are better equipped

than the legislature to review and revise procedural rules.

*Id.*[18]

In many cases, it will be possible to separate "substance" from "procedure," as the definitions of those terms envision. Where the legislature has not created a right with an inevitable incidental effect on procedure, as with the de novo jury review discussed in *Winegardner v. Greater Anchorage Area Borough*, 534 P.2d 541 (Alaska 1975), but has instead created a right and then appended procedures for the exercise of the right, those procedures are subject to invalidation by the court as an invasion of the rule making power. Thus, in *Gieffels v. State*, 552 P.2d 661, 667 (Alaska 1976) we acknowledged our previous holding that the legislature could properly create the substantive right "to a fair trial before an unbiased judge, and the right to pre-empt [*sic*] a judge without requiring actual proof of bias or interest." In so doing, however, we stated that the legislature only "has very limited power to provide for the means by which that pre-emption [*sic*] right may be exercised" and pointed to the relevant court rule as the governing provision to determine preemption procedures. *Id.*

In this case, we believe the necessary inquiry encompasses one of our previous decisions, the policies served by the Rules of Civil Procedure and by court promulgation of procedure generally, and the question of whether the legislature necessarily implicated procedure as a result of attention to substantive matters.

The past decision of aid here is *Silverton v. Marler*, 389 P.2d 3 (Alaska 1964). In *Silverton*, we held that compliance with

---

**18.** Our decision in *Winegardner v. Greater Anchorage Area Borough*, 534 P.2d 541 (Alaska 1975), also recognized the usefulness of examining the purposes of judicial rule making power. There the legislature had provided for de novo jury review of a borough's property assessment, in conflict with former Appellate Rule 45's requirement of review of an administrative decision on the administrative record. We held this to be a substantive enactment despite the impact of jury trials "upon the allocation of judicial resources," since that was "only incidental to the implementation of a

substantive right." *Id.* at 547 (footnote omitted).

In arriving at this holding, we noted that the legislature had expressed "a judgment on tax policy thoroughly within the ambit of" its authority, and therefore "applied the traditional substance-procedure distinction without hesitation." *Id.* at 547 n.18. However, we also pointed out, "Issues approaching the unchartered [*sic*] borders of the judicial power may require that we adopt a more elaborate analysis." *Id.*

Civil Rule 3, which states that the filing of a complaint commences a civil action, "interrupts the running of the statute" of limitations. *Id.* at 5. We thus overturned a statute purporting to require the issuance of a summons as a condition to commencement, saying "The manner in which the exercise of judicial power may be invoked—initially by commencing a civil action in court—is a matter directly involved with court practice and procedure, the regulation of which has been committed to this court under the constitution." *Id.* at 5–6 (footnote omitted). *Silverton* suggests a holding here that Rule 23, allowing the filing of a class action complaint to toll the statute of limitations, supersedes the inconsistent mandate of the Wage and Hour Act, since the manner in which the judicial power is invoked over class actions is as much a matter of judicial concern as where a litigant sues only in his or her own name.

This view receives further support when the policy objectives of the civil rules, and of court promulgations of rules of practice and procedure, are considered. The Rules of Civil Procedure seek a uniform approach to the efficient conduct of judicial business. These policies implicate the questions of when joinder of parties and claims should be allowed, and the proper procedure for handling cases in which numerous parties or claims are involved. Absent an ability to provide for these matters by appropriate rules of procedure, it is possible that vast amounts of judicial, administrative, and private resources would be wasted.

In revising Rule 23 the court was giving further attention to a matter traditionally considered within the domain of procedure,[19] and sought to end the "perverse anomaly" by which there could "be such a thing as a class action that did not run fully for or against the class." Kaplan, *The Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure*, 81 Harv.L.Rev. 356, 386 (1967) (footnote omitted). Instead, it was desired

to make the class action a "truly representative suit designed to avoid, rather than encourage, unnecessary filing of repetitious papers and motions." *American Pipe*, 414 U.S. at 550, 94 S.Ct. at 764, 38 L.Ed.2d at 725. As noted above, this was done by providing for an early decision on whether the suit is properly brought as a class action, mandating notice to the class, and requiring a judgment binding on members of the class who receive notice, unless they have requested exclusion.

In contrast, under the procedure contained in the Wage and Hour Act, class members must "opt-in" by becoming parties to the suit, or the statute of limitations will continue to run, and any judgment would therefore appear to bind only those who decide to join the suit. This regime, resembling Rule 23 prior to its revision, turns the purported class suit into a permissive joinder device, making it likely that a court will have to decide the same questions of law or fact in another action. Such a legislative change results in a waste of resources that the rules are designed to prevent. In addition, requiring the naming of each member of the class at an early stage of the litigation, and examining the facts surrounding satisfaction of the limitations period, may require the expenditure of time and effort not necessary to the initial determination of whether the action is properly brought as a class action under Rule 23's provisions. Requiring a return to the use of class actions as a permissive joinder mechanism thus prevents the court from controlling matters of practice and procedure in the most efficient manner.

The revision of Rule 23 also demonstrates the utility of placing rule making power in the judicial branch, and that the matter at issue here is appropriately within the domain of "practice and procedure."

When it was recognized that existing procedures no longer served the desired function, the court, by appropriate exercise of its power, altered the rule to improve the

---

19. The class suit originated in equity decisions, was apparently first codified in Federal Equity Rule 48 in 1843, and was placed in Federal Equity Rule 38 in 1912. *See* Simeone, *supra*, 60 Mich.L.Rev. at 908–11.

procedure. In contrast, the provision prohibiting tolling in class actions contained in AS 23.10.130(b) shows the difficulties arising from the legislation of procedure. First, the procedure is fixed by statute, and absent renewed legislative attention it cannot be revised to accommodate procedural innovations. Second, it specifies a procedure applicable only to one statutory scheme, defeating the uniformity essential to attaining efficient judicial procedures. Finally, it is a throwback to the past—an example of outdated thinking about class actions that has been discarded for general use.[20] It thus appears that AS 23.10.130(b) is closely related to the reasons for which the court was given rule making power.

However, Sea Airmotive argues that the legislature sought to effect substantive policies by its decision to require individualized satisfaction of the Alaska Act limitations period. It seeks to convince us that the statute is closely concerned with substantive rights, and that we should regard any effect on procedure as merely incidental. As we discuss below, we find that the policies expressed by the statute of limitations do not require its individual satisfaction, and that Sea Airmotive did receive adequate notice of the nature of the claims being asserted in this action, despite the failure to specifically name the class members at an early date.

Setting appropriate statutes of limitation is indeed a function within the legislature's purview, as such statutes represent judgments on questions of public policy appropriate to the legislative sphere. See Joiner & Miller, *supra* note 17, at 645. We therefore examine these substantive policies to determine whether we should construe Rule 23 differently in their light. *See Wise Mechanical Contractors v. Bignell*, 626 P.2d 1085, 1087 (Alaska 1981).

"It is generally recognized that the purpose of statutes of limitations is to encourage promptness in the prosecution of actions and thus avoid the injustice which may result from the prosecution of stale claims. Statutes of limitations attempt to protect against the difficulties caused by lost evidence, faded memories and disappearing witnesses." *Byrne v. Ogle*, 488 P.2d 716, 718 (Alaska 1971) (footnote omitted). Here the legislature, in requiring a plaintiff to be named to commence the suit as to him or her, has gone beyond the mere setting of a time in which actions under the Wage and Hour Act must be brought. Instead, as was the case in *Silverton*, the legislature has attempted to specify what constitutes commencement of the action.

Sea Airmotive contends that the legislature's action was proper because of its concern with "informing the defendant of the number and nature of claims being brought against him." However, we find nothing to indicate that the Wage and Hour Act has unique attributes requiring special notice to a defendant of the identity of each class member. Instead, the need for notice in Wage and Hour class actions would appear to be the same as in any other class suit.[21]

Sea Airmotive argues that information about the identities of class members was necessary to satisfy the policies of the stat-

---

**20.** As one commentator has written: "Granted that [the federal equivalent to AS 23.10.130(b)] may have reflected the appropriate application of reasoned thought on class actions at the time of its passage, experience has demonstrated the shortcomings of the 'opt-in' suit." Note, *The Class Action in Minimum-Wage Back-Pay Suits: A Proposal to Increase the Efficiency of Private Enforcement of the FLSA*, 51 So.Cal. Rev. 923, 935 (1978). The writer urges Congress to apply new Rule 23 to the FLSA, since the existing method has "proven to be an inefficient device for satisfying congressional desires for vigorous enforcement of the wage and hour laws." *Id.* at 923–24 (footnote omitted).

**21.** That the statute provides for more notice does not convince us otherwise, as AS 23.10.-130(b) was not enacted in response to present Civil Rule 23, but at a time when the former rule, like the statute, allowed these kinds of class actions to be brought only on an "opt-in" basis. The legislature's decision to resolve then-existing uncertainty about the tolling effect of filing a class action of this kind by requiring individual satisfaction of the limitations period does not indicate a desire to afford greater protection to Wage and Hour Act defendants than to others, but rather represents a choice of one procedural alternative over another.

ute of limitations and enable it to properly defend the action. We disagree. In the complaint filed in this suit came notice that the named plaintiff was asserting claims for overtime compensation on behalf of himself and other aircraft mechanics of Sea Airmotive. A memorandum submitted by Nolan less than three months after suit was filed informed Sea Airmotive that the claim for overtime was based on its practice of paying mechanics working in the field a flat rate for a seventy hour week, while paying overtime compensation to mechanics in Anchorage.

Under AS 23.10.100(a) an employer is required to maintain payroll records and retain them for a three year period. As Nolan's complaint indicated, Sea Airmotive's own records should have disclosed to it the names of employees affected by the practice in question, and the amount of their possible claims.

We think that Sea Airmotive had adequate notice of the class claims to satisfy the purposes of the statute of limitations contained in the Wage and Hour Act. As the United States Supreme Court stated in *American Pipe*:

> The policies of ensuring essential fairness to defendants and of barring a plaintiff who "has slept on his rights," *Burnett v. New York Central R. Co.*, 380 U.S. 424, 428, 85 S.Ct. 1050 [1054], 13 L.Ed.2d 941, are satisfied when, as here, a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment. Within the period set by the statute of limitations, the defendants have the essential information necessary to determine both the subject matter and size of the prospective litigation, whether the

actual trial is conducted in the form of a class action, as a joint suit, or as a principal suit with additional intervenors.

*American Pipe*, 414 U.S. at 554–55, 94 S.Ct. at 766–767, 38 L.Ed.2d at 727 (footnote omitted).

Sea Airmotive also contends that the court in *American Pipe* looked to whether tolling the statute would be consistent with the statutory scheme under which the class action in that case was brought, and that a similar examination here would require that we follow the legislature's decision not to toll the statute. Indeed, the defendant in *American Pipe* argued that tolling the statute under Rule 23 would abridge substantive rights protected by the Enabling Act under which the Supreme Court promulgated the Rules of Civil Procedure.[22] *Id.* at 556, 94 S.Ct. at 767, 38 L.Ed.2d at 728. The court found that the Clayton Act evidenced no intention to prevent tolling. *Id.* at 558 n.29, 94 S.Ct. at 768 n.29, 38 L.Ed.2d 729 n.29. However, we think a similar mode of analysis is inappropriate under the division of powers contained in the Alaska Constitution. Under the federal system, Congress is free to make procedural rules governing the courts that supplant those rules promulgated by the Supreme Court. Further, the method of promulgating rules includes review by Congress before a rule takes effect. *See* 28 U.S.C. § 2072.

In Alaska, this court is given exclusive, initial power to make rules governing practice and procedure and we need not look to the legislature's intentions to discern whether it has attempted to prescribe a different procedure than that contained in a court rule, unless the legislature has acted in the requisite manner to change a rule. Here the legislature plainly intended not to allow tolling, but if we find that provision to be procedural it need not be given effect.[23]

---

**22.** In the Enabling Act, Congress provided: "Such rules shall not abridge, enlarge or modify any substantive right and shall preserve the right of trial by jury ...." 28 U.S.C. § 2072.

**23.** We think this reasoning is also dispositive of Sea Airmotive's contention that Alaska Rule 23 should not be applied to the Alaska Act because the United States Supreme Court's advisory committee on civil rules stated that it was not intended that revised federal Rule 23 apply

Finally, we need give little weight to the federal decisions cited by Sea Airmotive that have held Rule 23 inapplicable to the FLSA. See Annot., 44 A.L.R. Fed. 118 (1979) (collecting cases). We agree with their finding that there is "a fundamental, irreconcilable difference between the class action described by Rule 23 and that provided for by FLSA § 16(b)," [24] but that determination is not relevant to our inquiry as to whether AS 23.10.130(b) is procedural.

In light of the above discussion, we conclude that AS 23.10.130(b) is procedural.[25] The legislature did not enact that section with the stated purpose of changing Rule 23, *Leege v. Martin*, 379 P.2d 447, 451 (Alaska 1963), and we therefore hold that Rule 23's procedures control. The superior court thus improperly applied the statute in this case, and its orders are REVERSED.

COMPTON, J., not participating.

---

to actions under the FLSA. While the notes of the advisory committee do not indicate why it did not extend the revised rule to the FLSA, we think the likely reason is the committee's disinclination to attempt to overturn a procedure contained in a specific statute with a broadly applicable rule. Given the fact that Congress retains power to control procedure, the committee may have thought it appropriate to accede to the expressed intent of Congress in the FLSA. No similar consideration is present with respect to the Alaska Act, and this court has as much power to regulate procedure under this statute as any other.

**24.** *LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir. 1975).

**25.** Sea Airmotive argues that we are precluded from so holding because of our statement in *Silverton* noting that "In 1962 this court worked in cooperation with the Alaska Legislative Council in a recodification program, the objective of which was to separate all procedural law from existing statutes, recodify the remaining substantive law into new titles, and promulgate the procedural provisions as rules of court." *Silverton*, 389 P.2d at 5 (footnote omitted). Sea Airmotive reasons that if AS 23.10.130(b) was procedural then it would have been removed from the statutes at that time.

The decision in *Silverton* shows the error in such a conclusion, since there we reversed our tentative view that the statute at issue was substantive. *Id.* In this case, it is not even apparent that the Wage and Hour Act was considered at the time of recodification, as the main emphasis of that project was to enact new codes of civil and criminal procedure.