STATE of Alaska, Petitioner,

v.

**Travis Dean WILLIAMS, Respondent.**

**No. 6025.**

Supreme Court of Alaska.

April 13, 1984.

---

Charles M. Merriner, Asst. Atty. Gen., Anchorage, Norman C. Gorsuch, Atty. Gen., Juneau, for petitioner.

Charlene A. Lichtmann and David J. Schmid, Kay, Christie, Saville & Coffey, Anchorage, for respondent.

Susan Orlansky, Asst. Public Defender, Dana Fabe, Public Defender, Anchorage, for amicus curiae the Public Defender Agency.

Before BURKE, C.J. and RABINOWITZ, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Justice.

The state challenges the constitutionality of Alaska's speedy trial rule, Criminal Rule 45. In the event that the 120-day rule is upheld, the state further contends that the Court of Appeals erred in holding the rule violated.

The facts underlying this proceeding are as follows. Thomas Andrus was strangled to death with an appliance cord. Shortly thereafter, Travis Williams placed the body in a pickup truck, drove a short distance, poured gasoline into the cab and ignited it.

On March 21, 1980, Travis Williams was indicted by a grand jury for first degree murder. Although the prosecutor had pos-

sessed additional evidence implicating Williams in connection with a "tampering with physical evidence" charge she requested only the first degree murder charge. At trial Williams testified that the decedent's wife, not he, had killed the decedent. He claimed he became involved only after the murder, when he took the body away and burned it. Williams was acquitted of the first degree murder charge.

Following the acquittal, Williams was charged with two counts of hindering prosecution in the first degree and with one count of tampering with physical evidence. The superior court dismissed the indictment for tampering with physical evidence on double jeopardy grounds.[1]

The state appealed, arguing that it was improper to have dismissed the charge of tampering with evidence. The Court of Appeals affirmed the dismissal. *State v. Williams*, 653 P.2d 1067 (Alaska App. 1982). The Court of Appeals did not reach the double jeopardy issue, affirming on the ground that Rule 45 had been violated.

## I.

*The Constitutionality of Criminal Rule 45*

Criminal Rule 45(b) provides that "[a] defendant charged with a felony, a misdemeanor, or a violation shall be tried within 120 days from the time set forth in paragraph (c) of this rule." Failure to comply with the rule results in dismissal of the charge with prejudice. Alaska R.Crim.P. 45(g).

■■■ The state's constitutional challenge to Rule 45 is based on a contention that the Rule violates the doctrine of separation of powers, impinging upon the legislature's power to define substantive rights.[2] This court's rule-making power derives from article IV, section 15 of the Alaska Constitution, which provides:

> The supreme court shall make and promulgate rules governing the administration of all courts. It shall make and promulgate rules governing practice and procedure in civil and criminal cases in all courts. These rules may be changed by the legislature by two-thirds vote of the members elected to each house.

We have relied upon the substance/procedure dichotomy in differentiating our rule-making power from the legislature's authority to enact statutes. In *Thomas v. State*, 566 P.2d 630 (Alaska 1977), the principle was enunciated as follows:

> [T]he distinction between substance and procedure is of importance because article IV, section 15 of the Alaska Constitution vests the power to make and promulgate rules governing practice and procedure in the Supreme Court of Alaska. While the power to create substantive rights is a legislative power, the authority to enact procedures to implement those rights is, by virtue of article IV, section 15, judicial.

*Id.* at 637 (footnote omitted).[3] The parties join issue on the question of whether Rule

---

**1.** The superior court "found it unnecessary to decide the Criminal Rule 45 issue." *State v. Williams*, 653 P.2d 1067, 1069 (Alaska App. 1982). That court did, however, find "that the evidence which was presented in the indictment for tampering with evidence was essentially the same evidence which the prosecution presented to the grand jury which indicted Williams for murder and at his trial on that charge." *Id.* at 1070. The Court of Appeals concluded: "This finding is supported by the record ... [and] the tampering with evidence charge arose from the same conduct as the murder charge ...." *Id.*

**2.** The doctrine of separation of powers is implicit in the Alaska Constitution. *Bradner v. Hammond*, 553 P.2d 1, 5 n. 7 (Alaska 1976). *See also Gieffels v. State*, 552 P.2d 661, 667 n. 5 (Alaska

1976) (under Alaska's tripartite form of government, the legislature may not impose a rule which would interfere with the proper functioning of the judicial system); *accord, Padie v. State*, 566 P.2d 1024, 1029–30 (Alaska 1977).

**3.** *See also Nolan v. Sea Airmotive, Inc.*, 627 P.2d 1035, 1042 (Alaska 1981) (terms "procedural" and "substantive" are a "form of shorthand for the concept that under Alaska's constitution, the supreme court is responsible for 'practice and procedure in civil and criminal cases in all courts.' Alaska Const. art. IV, § 15."); *accord, Channel Flying, Inc. v. Bernhardt*, 451 P.2d 570, 575–76 (Alaska 1969).

45 "creates" a substantive right or whether it merely constitutes a means of implementing a pre-existing right. The state contends that Rule 45 is a substantive, rather than procedural, enactment. In *Nolan v. Sea Airmotive, Inc.,* 627 P.2d 1035 (Alaska 1981) we stated:

> In determining where the court's power ends and the legislature's begins, we have noted that "substantive law creates, defines and regulates rights, while procedural law prescribes the method of enforcing the rights."

*Id.* at 1042, *quoting Ware v. City of Anchorage,* 439 P.2d 793, 794 (Alaska 1968) (footnote omitted). However, the court recognized that this definition fell "far short of drawing an unequivocal line," and therefore attempted to articulate a more useful definition focused upon functional concerns: [4]

> [A]n important part of the inquiry should be an examination of whether the rule or statute under scrutiny is more closely related to the concerns that led to the establishment of judicial rule making power, or to matters of public policy properly within the sphere of elected representatives.

*Id.* at 1042–43. *Nolan* delineated the parameters determining the scope of judicial rule making power as follows:

> The administration of justice is the day to day business of the courts; they are better equipped than a legislature to know the most effective and efficient methods of conducting that business. The field of judicial procedure should not remain static; there is need for regular review and revision of basic rules "to keep them abreast of new trends and applicable generally to the substantive law as it develops."

*Id.* at 1043, *quoting Leege v. Martin,* 379 P.2d 447, 450 (Alaska 1963).[5]

■ The state's principal argument in support of its assertion that Rule 45 is not merely "a method for enforcing a right" is based on the fact that Rule 45 protections exceed the speedy trial mandate of both the federal and Alaska Constitutions. In this regard we observed in *Deacon v. State,* 575 P.2d 1225, 1229 (Alaska 1978) that:

> State and federal constitutional requirements mandate that there be no unreasonable delay in bringing an accused to trial .... Rule 45 is designed to satisfy the imprecise limits of the constitutional right to a speedy trial with much room to spare ....

(Citations and footnotes omitted.) The disparity between constitutional requirements and Rule 45 time limits partly derives from the fact that Rule 45 serves two purposes. It "was promulgated to insure protection of the constitutional right to a speedy trial and to advance the public interest in swift justice." *Peterson v. State,* 562 P.2d 1350, 1358 (Alaska 1977) (footnote omitted).[6]

Assuming *arguendo* that Rule 45 will generally provide a defendant with a speedier trial than is constitutionally required, it is necessary to determine whether the rule thereby impermissibly "creates" a substantive right.[7] The fact that Rule 45 incidentally affects an accused's right to a speedy

---

**4.** *Nolan, supra,* 627 P.2d at 1042. In *Nolan* we noted that "[d]ecisions on the method of enforcing a right often affect substantive rights, and the regulation of substantive rights may have an impact upon judicial procedure." *Id. See also Smiloff v. State,* 579 P.2d 28, 33 n. 19 (Alaska 1978) ("We have recognized that the line between substance and procedure is an elusive one.")

**5.** Thus, if a rule primarily "prescribe[s] a method of enforcing a right," it falls within the domain of the judiciary's authority. *Nolan supra,* at 1042–43.

**6.** Williams and the Public Defender Agency argue that to the extent Rule 45 protections exceed the speedy trial mandate, they do so because of the demands of "judicial efficiency" and to promote other purposes which fall squarely within the judiciary's authority.

**7.** As was observed in *Nolan,* "[d]ecisions on the method of enforcing a right often affect substantive rights." 627 P.2d at 1042.

trial is not determinative of the constitutional issue raised here.[8]

One of the basic rationales underlying this court's adoption of Rule 45 was the concern to adhere as closely as possible to fixed distinctions in order to avoid replicating the case-by-case approach it was intended to supersede. As the Indiana Supreme Court observed in *State v. Lake Criminal Court*, 247 Ind. 87, 212 N.E.2d 21, 23 (1965) in evaluating arguments similar to those raised here:

This court could arbitrarily refuse to make a rule outlining the reasonable time limitations for a speedy criminal trial and wait until the appropriate case arises for a decision. However, in a realistic approach to this problem, the Court should not act in an ex post facto manner, leaving the trial courts in uncertainty as to what standards and procedures are to be applied, but rather this Court has the responsibility to fix in advance the required procedural steps in the trial court. Under Rule 1–4D, all trial courts have a guide and standard as the question arises. We therefore find no merit in the contention that this Court has no jurisdiction or no responsibility in seeing that judicial proceedings are administered in an orderly and uniform fashion in carrying out the constitutional provisions for a speedy trial.[9]

Similarly, we conclude that any additional protections which Rule 45 arguably confers upon criminal defendants are justified by the fact that these are incidental to the efficient implementation of the constitutional right to a speedy trial.[10]

The second purpose furthered by Rule 45 is the "societal interest" in ensuring that crimes will be prosecuted expeditiously.[11] Providing for prompt attention to criminal proceedings is a matter of calendaring,[12] a

---

**8.** *See, e.g., State v. Edwards,* 94 Wash.2d 208, 616 P.2d 620, 623 (1980) (en banc) ("State's assertion that Cr.R. 3.3 [similar to Rule 45] grants rights 'extending far beyond a constitutional speedy trial right' does not mean the rule violates protected right of the State to prosecute").

**9.** Efficiency is a legitimate judicial concern. *See Nolan supra,* at 1043.

**10.** This court has frequently developed bright-line rules to implement constitutional rights: *see State v. Glass,* 583 P.2d 872, 881 (Alaska 1978) (right of privacy and freedom from unreasonable searches and seizures); *Lauderdale v. State,* 548 P.2d 376, 381–82 (Alaska 1976) (confrontation). *See also* Alaska R.Crim.P. 39 (confrontation), Rule 16(c)(3) (right to counsel) and Rules 16(a) and (b) (compulsory process).

**11.** The U.S. Supreme Court explained this rationale as follows:

The inability of courts to provide a prompt trial has contributed to a large backlog of cases in urban courts which, among other things, enables defendants to negotiate more effectively for pleas of guilty to lesser offenses and otherwise manipulate the system. In addition, persons released on bond for lengthy periods awaiting trial have an opportunity to commit other crimes .... Moreover, the longer an accused is free awaiting trial, the more tempting becomes his opportunity to jump bail and escape. Finally, delay between arrest and punishment may have a detrimental effect on rehabilitation.

If an accused cannot make bail, he is generally confined .... This contributes to the overcrowding and generally deplorable state of those institutions. Lengthy exposure to these conditions "has a destructive effect on human character and makes the rehabilitation of the individual offender much more difficult." At times the result may even be violent rioting.· Finally, lengthy pretrial detention is costly. The cost of maintaining a prisoner in jail varies from $3 to $9 per day, and this amounts to millions across the Nation. In addition, society loses wages which might have been earned, and it must often support families of incarcerated breadwinners. *Barker v. Wingo,* 407 U.S. 514, 519–21, 92 S.Ct. 2182, 2186–87, 33 L.Ed.2d 101, 111 (1972) (footnotes omitted).

**12.** *See* the stated purpose of the federal Speedy Trial Act of 1974, 18 U.S.C.A. §§ 3161–3174 (West Supp.1983): "To assist in reducing crime and the danger of recidivism by requiring speedy trials ...." *quoted in* G. Bridges, *The Speedy Trial Act of 1974: Effects on Delays in Federal Criminal Litigation,* 73 J. of Crim.Law & Criminology 50, 50 n. 1 (1982). *See also State v. Estencion,* 625 P.2d 1040, 1043 (Hawaii 1981), where the court upheld Hawaii's analogue to Rule 45, observing:

The purpose of Rule 48 is to ensure an accused a speedy trial, which is separate and distinct from his constitutional protection to a speedy trial. And, its purpose is also in furtherance of policy considerations to relieve congestion in the trial court, to promptly process all cases reaching the courts, and to advance the efficiency of the criminal process.

function generally considered to be within the judiciary's domain.[13] Thus this court's promulgation of Rule 45 is not violative of the doctrine of separation of powers. As the Seventh Circuit observed in *U.S. v. Clay*, 481 F.2d 133, 137 (7th Cir.1973), *cert. denied*, 414 U.S. 1009, 94 S.Ct. 371, 38 L.Ed.2d 247 (1973),

> "[Federal] Rule [Crim.P.] 48(b) [similar to Rule 45] is a codification of the inherent power of a court to dismiss a case for want of prosecution." [citing Moore's Federal Practice ¶ 48.01[1].] In order to maintain control of its calendar, a court has the power to require the parties to proceed with diligence and to meet deadlines established by court rule or order.[14]

Assuming *arguendo* that Rule 45 is a legitimate exercise of judicial power, the state further argues that dismissal with prejudice "is an extremely important public policy matter," one that the legislature, rather than the courts, should determine.[15] The state also compares Rule 45 to a statute of limitations, contending that "the two rules are analogous because they function the same way—trial delay causing an absolute bar to prosecution." Since it is well-established that statutes of limitation are "substantive" rather than "procedural," *Nolan, supra*, 627 P.2d at 1045, the state argues that determination of Rule 45 time limits and sanctions is also within the prerogative of the legislature. The Washington Supreme Court explicitly rejected a similar argument in *State v. Edwards*, 94 Wash.2d 208, 616 P.2d 620 (1980) (en banc). There the court considered the contention that Washington's speedy trial rule unconstitutionally

infringes on the legislative function by creating a substantive "statute of limitations." This is not true. The time limits are triggered by the *State's* actions and are not an attempt to limit the time for prosecution of a specific crime.

616 P.2d at 623. Similarly, the Second Circuit reasoned in *U.S. v. Furey*, 514 F.2d 1098, 1104 (2d Cir.1975) that, "[T]he dismissal remedy cannot be denominated substantive merely because it can operate to cut off the right of the government to prosecute."

In *Strunk v. United States*, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973), the U.S. Supreme Court observed that, "In light of the policies which underlie the right to a speedy trial, dismissal [with prejudice] must remain ... 'the only possible remedy.'" 412 U.S. at 440, 93 S.Ct. at 2263, 37 L.Ed.2d at 61, *quoting Barker v. Wingo*, 407 U.S. 514 at 522, 92 S.Ct. 2182 at 2187, 33 L.Ed.2d 101 at 112 (1972). *Strunk* prompted the American Bar Association in formulating its Standards for Criminal Justice to remain "unswayed in the basic philosophy that anything less renders the right of speedy trial largely meaningless." II *Standards for Criminal Justice: Speedy Trial* § 12 at 12.4, Introduction (1978). A dismissal without prejudice would not fulfill the objectives of the rule, particularly from the defendant's standpoint, such as preservation of evidence to prove a defense, avoidance of "a long period of pretrial imprisonment or conditional release" and of "a long period of anxiety and public suspicion arising out of the accusation." *Id.* at 12.5, commentary to Standard 12–1.1.[16]

---

**13.** *See,* Uniform Rules of Criminal Procedure, Rule 721 comment, 10 U.L.A. 320 (1974) (assumption is that court possesses inherent residual control over its own calendar).

**14.** *See also U.S. v. Furey*, 514 F.2d 1098, 1104 (2d Cir.1975) ("Since it is within the court's inherent power to dismiss a prosecution with prejudice for prosecutorial delay not rising to constitutional dimensions, the district court surely may adopt a rule governing the exercise of that power"). ·

**15.** The state, in support of its position cites, in part: *State ex rel. Maines v. Baker*, 254 So.2d 207, 208 (Fla.1971); *State v. Lake Criminal Court*, 247 Ind. 87, 212 N.E.2d 21, 22–23 (1965).

**16.** Thus, Standard 12–4.1 provides, in part:
> If a defendant is not brought to trial before the running of the time for trial, as extended by excluded periods, the consequence should be absolute discharge. Such discharge should forever bar prosecution for the offense charged and for any other offense required to be joined with that offense.

■ In view of the foregoing, we conclude that the dismissal with prejudice sanction for non-compliance with Rule 45 represents an appropriate exercise of this court's rule-making power. It is not unusual for procedural rules to carry severe sanctions for non-compliance.[17] Several state rules similar to Rule 45 provide for dismissal with prejudice as a sanction for non-compliance.[18]

In conclusion we hold that Rule 45 is a constitutional exercise of this court's rule-making authority.[19]

## II.

### *Does Rule 45 Prohibit Prosecution of Williams on the Tampering With Physical Evidence Charge?*

Although Williams was arrested for murder on March 10, 1980, he was not indicted for "tampering with physical evidence" until January 6, 1981. The Court of Appeals held that Rule 45's 120-day period began to run on the tampering charge when Williams was first arrested, and that it had expired by the time the superior court dismissed the tampering indictment against him. It thus affirmed the superior court's ruling, although on different grounds. *State v. Williams*, 653 P.2d 1067 (Alaska App.1982). We agree with the Court of Appeals' first holding but disagree with its second.

The issue here is whether certain events which suspended the running of the 120-day period on the murder charge also suspended the running of the 120-day period on the charge of tampering.[20] While he was awaiting trial for murder, Williams requested or assented to several continuances. The periods during which the case against him was continued were properly excluded from the operation of the 120-day rule so far as the murder charge was concerned. Crim.R. 45(d)(2), (3). Williams contends that murder and tampering are two distinct offenses and that the continuances which suspended the running of the 120-day period on the murder charge did not do so with respect to the tampering charge. His argument ignores our previous interpretation of Rule 45.

In *Westdahl v. State*, 592 P.2d 1214 (Alaska 1979), and *Peterson v. State*, 562 P.2d 1350 (Alaska 1977), we concluded that Rule 45(c) requires the 120 days to begin running on all charges "arising out of the same conduct" when a defendant is arrested for any one offense. Rule 45(c) now reads as follows:

(c) *When Time Commences to Run.* The time for trial shall begin running,

The A.B.A. standard is in accordance with the A.L.I. position. *See* Uniform Rules of Criminal Procedure Rule 722 and comment, 10 U.L.A. at 324.

See also *Hibert v. Dooling*, 476 F.2d 355 (2d Cir.1973).

**17.** *Compare*, Alaska R.Civ.P. 12(h) (waiver of certain defenses not timely asserted); Alaska R.Civ.P. 38(d) (constitutional right to jury trial may be waived if demand untimely); Alaska R.Civ.P. 12(a) and 55(a) (failure to file timely responsive pleading may result in entry of default judgment).

**18.** The apparent harshness of the Rule 45 sanction is substantially tempered by the provision for excluded periods of delay, including a general "good cause" justification. Rule 45(d).

**19.** Review of cases from the eleven jurisdictions which have adopted time-specific speedy trial rules without legislative authorization lends support to our holding that Rule 45 is constitutional. *See, e.g., Cassell v. State*, 273 Ark. 59, 616 S.W.2d 485, 491 (1981); *State v. Lott*, 286 So.2d

565, 566 (Fla.1973), *cert. denied*, 417 U.S. 913, 94 S.Ct. 2613, 41 L.Ed.2d 217 (1974), and *State ex rel. Maines v. Baker*, 254 So.2d 207 (Fla.1971); *State v. Lake Criminal Court*, 247 Ind. 87, 212 N.E.2d 21 (1965); *State v. Edwards*, 94 Wash.2d 208, 616 P.2d 620 (Wash.1980) (en banc).

**20.** The state does not argue that it is entitled to an extension because the "tampering with evidence" charge does not arise out of the same conduct as the murder charge or is based on new evidence not available at the time of the initial arrest. *See* Crim.R. 45(c)(1). See also note 1 *supra*. Furthermore, the state does not challenge the Court of Appeals' finding that there was sufficient evidence to convict Williams of tampering at the time he was indicted for murder. *State v. Williams*, 653 P.2d 1067, 1070 (Alaska App.1982). Thus, the sole issue in regard to the application of Rule 45 is whether events which suspended the 120-day period on the murder charge also did so on the tampering charge.

without demand by the defendant, as follows:

(1) From the date the defendant is arrested, initially arraigned, or from the date the charge (complaint, indictment, or information) is served upon the defendant, whichever is first. If the defendant is in custody or incarcerated on other charges at the time the alleged offense occurs, the time for trial shall begin running 10 days after the case is referred in writing by correctional officials to the prosecuting attorney, or 15 days from the time action is instituted in the correctional facility to impose administrative segregation, whichever is earlier. The arrest, arraignment, or service upon the defendant of a complaint, indictment, or information, relating to subsequent charges arising out of the same conduct, or the refiling of the original charge, shall not extend the time, unless the evidence on which the new charge is based was not available to the prosecution at the time of the original commencement date of the 120 day period and a showing of due diligence in secur-

ing the defendant for the original charges is made by the prosecution; or

(2) If the defendant is to be tried again following a mistrial, an order for a new trial, or an appeal or collateral attack, from the date of mistrial, order granting a new trial, or remand.[21]

Our interpretation of this rule depends on the words "time for trial" with which it begins. If "time for trial" meant only "time for trial on the offense for which the defendant was arrested," the prosecution could evade Rule 45 by declining to file charges on offenses which arise out of the same conduct as the original offense, thus enabling itself to try the defendants on those other charges at its leisure. *Westdahl* and *Peterson* reject this result. In those cases we implicitly defined "time for trial" as "time for trial on the original charge, and on all subsequent charges arising out of the same conduct."

 Since "time for trial" has been previously defined in the context of Rule 45(c), we see no reason to change this definition when computing the time excluded from the 120-day period under Rule 45(d).[22]

---

**21.** At the time Williams was prosecuted, the last sentence of Rule 45(c)(1) referred to "the time the defendant was originally arrested, arraigned, or served with the original charge." It was amended to substitute "the time of the original commencement date of the 120-day period." *State v. Williams*, 653 P.2d at 1069 n. 4. The two phrases are legally equivalent.

**22.** Criminal Rule 45(d) reads as follows:

(d) *Excluded Periods.* The following periods shall be excluded in computing the time for trial:

(1) The period of delay resulting from other proceedings concerning the defendant, including but not limited to motions to dismiss or suppress, examinations and hearings on competency, the period during which the defendant is incompetent to stand trial, interlocutory appeals, and the trial of other charges. No pre-trial motion shall be held under advisement for more than 30 days and any time longer than 30 days shall not be considered as an excluded period.

(2) The period of delay resulting from an adjournment or continuance granted at the timely request or with the consent of the defendant and his counsel. The court shall grant such a continuance only if it is satisfied that the postponement is in the interest of

justice, taking into account the public interest in the prompt disposition of criminal offenses. A defendant without counsel shall not be deemed to have consented to a continuance unless he has been advised by the court of his right to a speedy trial under this rule and of the effect of his consent.

(3) The period of delay resulting from a continuance granted at the timely request of the prosecution, if:

(a) The continuance is granted because of the unavailability of evidence material to the state's case, when the prosecuting attorney has exercised due diligence to obtain such evidence and there are reasonable grounds to believe that such evidence will be available at the later date; or

(b) The continuance is granted to allow the prosecuting attorney in a felony case additional time to prepare the state's case and additional time is justified because of the exceptional complexity of the particular case.

(4) The period of delay resulting from the absence or unavailability of the defendant. A defendant should be considered absent whenever his whereabouts are unknown and in addition he is attempting to avoid apprehension or prosecution or his whereabouts cannot be determined by due diligence. A defendant should be considered unavailable

An event which suspends the 120-day period for one charge suspends it for all charges arising out of the same conduct, whether or not they have been filed when the event takes place. Any other interpretation would require courts to supervise a complicated system of consents and waivers and force prosecutors to file "pyramid charges." We agree with the State that prosecutors should retain some control over the ways in which offenses are charged, subject, of course, to the prohibition on double jeopardy and to the accused's rights to a speedy trial.

Although the State argued below that only 94 of the 120 days had run when the superior court dismissed the indictment against Williams, the Court of Appeals has never considered the merits of the State's position.[23] On remand, it should first evaluate the State's calculations. If the State has not violated Rule 45, the superior court's double jeopardy decision will then be reviewable.

The Court of Appeals' determination that Rule 45 is constitutional is AFFIRMED. Its holding that Williams was not brought to trial within the time allowed by Criminal Rule 45 on the tampering charge is VACATED and the case REMANDED for further proceedings consistent with this opinion.

whenever his whereabouts are known but his presence for trial cannot be obtained or he resists being returned to the state for trial.

(5) A reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and there is good cause for not granting a severance. In all other cases, the defendant shall be granted a severance in order that he may be tried within the time limits applicable to him.

(6) The period of delay resulting from detention of the defendant in another jurisdiction provided the prosecuting attorney has been diligent and has made reasonable efforts to obtain the presence of the defendant for trial. When the prosecution is unable to obtain the presence of the defendant in detention, and seeks to exclude the period of detention, the prosecution shall cause a detainer to be filed with the official having custody of the defendant and request the official to advise the defendant of the detainer and to inform the defendant of his rights under this rule.

(7) Other periods of delay for good cause.

23. The state has not argued that the time between Williams' charge of first degree murder and his acquittal thereon is a "period of delay resulting from other proceedings concerning the defendant" and thus an excluded period under Rule 45(d)(1). We therefore express no opinion on that issue. It is, however, clear that at least the actual trial time of the murder charge is excluded under the "trial of other charges" language of subsection (d)(1).