Henry C. LEEGE, District Magistrate, First Judicial District, at Juneau, and State of Alaska, Appellants,

v.

Al MARTIN, James Houston, William Davis, Jr., and John G. Martin, Appellees.

No. 256.

Supreme Court of Alaska.

Feb. 20, 1963.

Rehearing Denied March 13, 1963.

George N. Hayes, Atty. Gen., of Alaska, Avrum M. Gross, Asst. Atty. Gen., Juneau, for appellants.

Roger G. Connor, Juneau, for appellees.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

DIMOND, Justice.

Appellees, commercial fishermen, were convicted by a jury in district magistrate court of fishing in a closed area. By statute in 1959 this offense was made a misdemeanor with penalties of fine and imprisonment.[1] In addition, the statute provided for forfeiture of commercial fishing licenses.[2] In 1961 the legislature enacted chapter 112 which amended the license forfeiture provision by adding the sentence: "Any forfeiture under this section is effective immediately upon conviction and no stay pending appeal may be granted."[3]

Appellees appealed their convictions to the superior court. Pending determination of those appeals, the superior court ordered a stay of that part of the magistrate court's judgment providing for forfeiture of the fishing licenses, and declared unconstitutional that portion of chapter 112 which prohibited the granting of a stay pending appeal. The appellants (who for convenience will be referred to collectively as the "state") have appealed to this court, claiming that the superior court's decision was erroneous. We shall consider two issues: (1) whether chapter 112 effectively changed rules of practice and procedure made and promulgated by this court; and (2) whether chapter 112 denies appellees equal rights, opportunities, and protection under the law in violation of art. I, § 1 of the state constitution.[4]

*Rule Making Power.*

Article IV, § 15 of the constitution provides:

"The supreme court shall make and promulgate rules governing the administration of all courts. It shall make and promulgate rules governing practice and procedure in civil and criminal cases in all courts. These rules may be changed by the legislature by two-thirds vote of the members elected to each house."

It is the state's position that enactment of chapter 112 prohibiting a stay pending appeal constituted the exercise by the legislature of its constitutional authority to change rules of practice and procedure that had been made and promulgated by the supreme court.

This court has adopted a rule governing stays of imprisonment and fines where an appeal in a criminal case is taken from the magistrate court to the superior court.[5]

1. SLA 1959, ch. 94, art. III, § 12, as amended SLA 1960, ch. 131, § 24.

2. SLA 1959, ch. 94, art. III, § 11 makes the forfeiture discretionary with the court on first and second convictions, and mandatory on a third conviction.

3. SLA 1961, ch. 112.

4. Alaska Const. art. I, § 1 provides: "This constitution is dedicated to the principles that all persons have a natural right to life, liberty, the pursuit of happiness, and the enjoyment of the rewards of their own industry; that all persons are equal and entitled to equal rights, opportunities, and protection under the law; and that all persons have corresponding obligations to the people and to the State."

5. Mag.Crim.R. 2(d) provides in part: "A sentence of imprisonment shall be stayed if an appeal is taken and the defendant elects not to commence service of the sentence or is admitted to bail. A sentence to pay a fine or a fine and costs may be stayed, if an appeal is taken, by the magistrate or by the superior court upon such terms as the court deems proper." This rule was Crim.R. 60(d) prior to January 1, 1963, with identical wording.

There is no rule which specifically authorizes the superior or magistrate courts to stay the execution of a license forfeiture.

Appellees contend that in this situation, when there is no specific rule in a particular procedural area, the legislature has no authority to act; since its constitutional power to change "These rules" is limited to promulgated, existent rules upon which a change may be wrought. On the other hand, the state argues that the rules promulgated by this court must be considered in their totality; that it is the body of those rules as an entity which the legislature is empowered to change; that an addition to the body of rules is no less a "change", within the meaning of the constitution, than a deletion or amendment of a specific, existing rule; and that the legislature therefore does have the power to enact a procedural statute in an area not covered specifically by a rule of this court.

This is not the occasion to answer the question raised by appellees and the state as to whether the legislature may intervene to add a provision dealing with a procedural problem not specifically covered by a court rule. The reason is that chapter 112, if it is held to have force, will directly change, by limitation, specific rules of practice and procedure promulgated by this court.

Where the jurisdiction of this court is invoked, either by way of appeal, by petition for review, or by original application, this court or a justice thereof is authorized by Supreme Ct.Rules 7(d) and 33(b) to stay the enforcement or effect of the judgment appealed from or of the order or decision sought to be reviewed, and to stay proceedings in the court below.[6] The express authority to grant stays is sufficiently broad to allow this court to stay the enforcement of that portion of a magistrate court's judgment providing for a license forfeiture. If chapter 112 is effective, it will obviously limit this court's authority to grant stays, and thus would bring about a change of Supreme Ct.Rules 7(d) and 33(b). The question we are faced with is whether the legislature properly exercised its constitutional rule changing power in enacting chapter 112, so that the statute should be given effect as a limitation of judicial power to grant stays.

Chapter 112 was House Bill No. 266 in the first session of the 1961 legislature. Its title reads: "An Act relating to the Fish and Game Code; amending Sec. 11, Art. III, Ch. 94, SLA 1959; and providing for an effective date." Following the standard enacting clause, the body of the bill reads as shown below.[7] There is nothing either in the title or the body of the bill indicating that it was intended to change any rules

6. As to appeals, Supreme Ct.R. 7(d) (2) provides: "The supreme court or a justice thereof may stay the enforcement or effect of the judgment appealed from or the proceedings in the court below upon such terms as to bond or otherwise as may be proper. Application for a stay to this court or a justice thereof normally will not be entertained unless application has first been made to the court below and has been denied, or unless the security offered below has been disapproved."

As to petitions for review and original applications, Supreme Ct.R. 33(b) provides: "Proceedings in the superior court or the enforcement of any order or decision thereof shall not be stayed by the filing of a petition for review or of an original application for relief unless the superior court or this court or a justice thereof shall so order. Applications for stay to this court or a justice thereof normally will not be entertained unless application has first been made to the superior court and has been denied."

7. "Section 1. Sec. 11, Art. III, Ch. 94, SLA 1959 is amended to read as follows: "Sec. 11. License Forfeiture. Upon both first and second convictions of a person for a violation of any provision of this Article or of any Federal or State law or regulation for the protection of the commercial fish of Alaska, the Court may, in addition to the penalty imposed by law, forfeit the commercial fishing license of such person for a period of one year. Upon a third conviction of any such person of any such violation, the forfeiture of such license for a period of not more than three years shall be man-

of procedure that had been adopted by this court.

Legislative authority to change court rules is conferred simply by the words: "These rules may be changed by the legislature by two-thirds vote of the members elected to each house."[8] This constitutional provision does not specify the form a legislative measure should take—no wording is required which would indicate that the power to change rules is being exercised. But if such wording is not made a requirement, the purpose of the constitutional provision vesting rule making power in the judiciary will be defeated.

There were sound reasons for placing in the judicial branch of government, rather than in the legislature, the initial and primary responsibility for making rules of court practice and procedure. The administration of justice is the day to day business of the courts; they are better equipped than a legislature to know the most effective and efficient methods of conducting that business. The field of judicial procedure should not remain static; there is need for regular review and revision of basic rules "to keep them abreast of new trends and applicable generally to the substantive law as it develops."[9] The legislative process does not readily adapt itself to that end. Unfamiliar with court practice, legislatures are not in a position to recognize the need for procedural revision when it arises. When the need is called to their attention, they lack the experience and expertness necessary to solve it. As a result, necessary changes come slowly, and judicial procedure becomes undesirably rigid.[10] Courts, however, are primarily concerned with providing the most effective and efficient system for carrying out the administration of justice. This concern, and a close familiarity with rules of practice through daily use, puts the courts in a position to recognize immediately the need for procedural revision and to act quickly in bringing it about. Consequently, the courts are better equipped than the legislature to review and revise procedural rules.

■ Judicial power to make rules of practice and procedure is not absolute. The legislature may change rules initiated by the judiciary when the desirability of making a change is evident, such as in a case where a particular rule of procedure may involve considerations of public policy that are better left to the legislature to pass upon. But this power of legislative review is not without restrictions. The constitutional convention was careful to provide that court rules could not be changed as simply as other laws could be enacted. A two-thirds vote of the members elected to each house, rather than a simple majority, is required in order to change rules of practice and procedure.[11]

■■ The object of such a limitation is to prevent unintentional, rash, ill-considered and too easy intervention by the legislature which would ultimately frustrate the sound purpose in giving courts the primary authority and responsibility for regulating their own affairs.[12] But that object cannot

datory. Any forfeiture under this section is effective immediately upon conviction and no stay pending appeal may be granted.

"Sec. 2. This Act takes effect on the day after its passage and approval or on the day it becomes law without such approval."

8. Alaska Const. art. IV, § 15.

9. Alaska Rules of Court Procedure and Administration, Foreword (1963).

10. Levin & Amsterdam, Legislative Control over Judicial Rule-Making: A Problem in Constitutional Revision, 107 U.Pa. L.Rev. 1, 10–11 (1958).

11. Alaska Const. art. IV, § 15 provides in part: "These rules may be changed by the legislature by two-thirds vote of the members elected to each house."

12. In their article on legislative control over judicial rule making (note 10, supra) the authors comment on that part of art. IV, § 15 of the Alaska Constitution which states that court-made rules may be changed by the legislature by two-thirds vote of the members elected to

be achieved unless the attention of the legislature is directed to the fact that it is employing, not just its general power of enacting laws, but its particular power of reviewing the exercise of an authority vested in the judicial branch of government. During every session since statehood the legislature has passed laws containing some procedure. Efforts are being made to more effectively screen all bills to eliminate procedure, but the danger that bills containing some procedure will escape notice and be enacted will always be present. Unless the specific intent of the legislature to change procedure is expressed in the bill itself, the courts, as a matter of practical necessity, will have to regard procedural changes as unintentional. While the procedure that may be contained in a given bill was included with the best of intentions and without realizing its possible effect on established court operations, it often is so basic as to require wholesale revision of as many as six sets of court rules. The only answer is cooperation between the legislative and judicial branches. Notification in the bill itself that the intent is to change procedure seems to be a partial answer. Another partial answer is to advise the Supreme Court when such a bill is being considered and

give it an opportunity to be heard so that the legislature will be advised on all ramifications of the proposed change.

■■ As a matter of reason and necessity and in order to give article IV, section 15 of the constitution a practical working interpretation, we must hold that a legislative enactment will not be effective to change court rules of practice and procedure unless the bill specifically states that its purpose is to effect such a change.[13] Since chapter 112 does not contain such a statement of purpose, that portion of the statute which purports to forbid the granting of stays pending appeal is ineffective and does not change rules of practice and procedure made and promulgated by this court.

*Equality Under the Law.*

■ The statutory denial of a stay is also without legal effect because it deprives appellees of "equal rights, opportunities, and protection under the law", to which they are entitled under art. I, § 1 of the state constitution. This constitutional guarantee of equal treatment, like the equal protection clause of the federal constitution, is the embodiment of the fundamental principle that all men are equal before the

each house. They say.: "The effect of such provision is to discourage rash and too-facile intervention in the business of the courts. Legislative attention is focused upon a bill proposing to regulate court procedure and substantial legislative support is required for its passage. This is in accord with the fundamental proposition that the place of the legislature in the field of judicial administration and procedure should be that of a reserved ultimate reviewing power, not that of a frequently-intervening supervisory force. On the whole, the courts can be expected to manage their own business as well as it can be managed. If in some particular they do not, they should have a first chance to experiment and change. Recurrent legislative overhaul of mere mechanics is not in order. It is only in the case of a persistent and flagrantly unpopular course of judicial conduct, a case in which the courts have made an important decision of pub-

lic policy and made it in a way that substantially opposes the strong sense of popular opinion, that appeal to overruling legislative authority is needed. In such a case public disapproval of judiciary policy should express itself in a strong preponderance of the legislative vote. Two-thirds of the legislators selected to each house should concur upon the need for intervention before the legislature moves to intervene." Levin & Amsterdam, supra n. 10, at 39–40.

13. This policy is expressed in Civ.R. 93 and Crim.R. 52: "These rules are promulgated pursuant to constitutional authority granting rule making power to the supreme court, and to the extent that they are inconsistent with any procedural provisions of any statute not enacted for the specific purpose of changing a rule, shall supersede such statute to the extent of such inconsistency." Alaska Rules of Court Procedure and Administration (1963).

law.[14] It is a prohibition against laws which, in their application, make unjust distinctions between persons. As to this case, the guarantee of equality of treatment prohibits legislation which denies to one group of persons the enjoyment of certain rights which are afforded to another group, when considering the purpose of the legislation, there is no reasonable basis for not treating both groups the same.

The group of persons singled out for the imposition of a special burden consists of licensed, commercial fishermen whose licenses have been forfeited following conviction of violations of fisheries laws or regulations. If these persons exercise their right to appeal, they are denied one of the normal steps in the appellate process—the opportunity to invoke the discretionary authority of a court to stay a license forfeiture pending appeal. Another group of persons upon whom this burden is not imposed consists of those engaged in pursuits other than fishing, where occupational licenses are also required. Doctors, real estate brokers and salesmen, dentists, pharmacists, nurses, and physical therapists may have their licenses revoked or suspended by administrative agency action upon conviction of felonies or crimes involving moral turpitude.[15] In all of these instances, appeals from the license suspension or revocation may be taken to the superior court under the administrative procedures act.[16] In these cases stays pending appeal are not prohibited; instead, the act expressly acknowledges the superior court's authority to grant them.[17]

Commercial fishermen and other persons engaged in licensed activities constitute a broad class of persons where license suspension or revocation follows conviction of crime. But within this broad class there is a manifest disparity of treatment under the law. Persons engaged in pursuits other than commercial fishing have the right to invoke the discretionary power of a court to grant a stay of license suspension, and thus are afforded an opportunity to continue to engage in their usual occupations pending appellate review. But commercial fishermen are denied that right and opportunity. Judicial authority to grant stays is forbidden as to them. Pending appellate review, they are prohibited from lawfully engaging in their usual occupation.

■ A discrimination against commercial fishermen can be justified only if there is some reasonable basis for placing them in a different class from those engaged in other licensed occupations, and the reasonableness of the classification depends upon whether the class denied a stay pending appeal includes all persons who are similarly situated with respect to the purpose of the law, and none who are not.[18]

■ The legislative purpose in enacting chapter 112 is not explicitly stated. With deference to legislative motive, we assume a legitimate public purpose. And since there is an obvious public interest in effective regulation of Alaska's commercial fisheries resources, we can infer as a general purpose of the law that the legislature believed it would be in some way detrimental to the public good if there was not

14. Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1955).

15. §§ 35-3-87, 88 ACLA 1949 [doctors]. ACLA Cum.Supp.1957: § 35-2-228(c) [real estate brokers and salesmen]; § 35-3-60u(b) [dentists]; § 35-3-80m(a) [pharmacists]; § 35-3-130m(2) (3) [nurses]; § 35-3-170(c) (d) [physical therapists].

16. SLA 1959, ch. 143, art. VII, § 24.

17. SLA 1959, ch. 143, art. VII, § 25(6) provides in part: "The Superior Court in which proceedings under this section are instituted may stay the operation of the administrative order or decision pending the judgment of the court, or until the filing of a notice of further appeal from the judgment, or until the expiration of the time for filing such notice; provided that no such stay shall be imposed or continued if the court is satisfied that it is against the public interest."

18. See Tussman & tenBroek, The Equal Protection of the Laws, 37 Calif.L.Rev. 341, 344-346 (1949).

immediate enforcement of license forfeiture following conviction.

But there is no discernible reason why there would not be equal need for immediate enforcement of license suspension or revocation where other occupations are concerned. When doctors, dentists, nurses or pharmacists, for example, are convicted of felonies or offenses involving moral turpitude, there is a reasonable relationship between revocation of their licenses and the public health and safety.[19] We do not perceive any lesser need for prohibiting a stay of license revocation pending appeal in these instances, for the purpose of more adequately safeguarding the public good, than in the case of commercial fishermen who are convicted of misdemeanors.[20] There is no apparent reason why both classes should not be treated the same.

The state contends that because of factors peculiar to the fishing industry there is justification for dealing with fishermen in this special manner. It argues that license suspension is probably the most effective penalty that may be applied to one who violates the fishing laws and regulations; that most violations arise in the salmon fisheries; that the salmon fishing season is of relatively short duration each year; that if license forfeiture may be stayed pending appeal from a conviction, the forfeiture cannot be effective until the appeal is disposed of, and that this would generally not be until the fishing season is over; that the penalty of license forfeiture is no penalty at all if not imposed during the fishing season; that a convicted fisherman, by simply prosecuting an appeal and obtaining a stay, could practically obviate the effect of a license forfeiture. The state contends that it was for the purpose of closing this avenue of escape—to make certain that the penalty could not be avoided—that the legislature acted to deny convicted fishermen the right to obtain a stay pending appeal.

Whether this was the purpose of the law, we do not know. The state has produced no evidence showing that effective enforcement of fisheries laws and regulations will be unduly hampered if convicted fishermen are permitted to engage in their usual occupations pending appeal. But even if we were to accept the state's hypothesis as to legislative purpose, and were to hold that this was a sufficient basis for the distinction made between licensed commercial fishermen and those engaged in other licensed pursuits, we would still find an infringement of the constitutional guarantee of equal treatment.

The vice of the classification here is that it includes too many persons; it denies an important step in appellate procedure, not only to those who may escape the penalty if a stay is allowed, but also to all those persons for whom a license forfeiture will be an effective penalty, regardless of the time that it takes effect. That such is a result of the classification is evident from the record in this case. Appellees' licenses were forfeited for a period of one year. If their convictions are affirmed on appeal, and the license forfeiture takes effect at that time, this penalty is still an effective one regardless of whether the period of forfeiture commences after the close of a salmon fishing season. These men will be without licenses for an entire year, and that period will necessarily include at least one complete salmon fishing season, no matter when the period of forfeiture starts to run. A stay pending appeal could not reasonably result in the penalty being avoided in these cases.

19. See Lawrence v. Briry, 239 Mass. 424, 132 N.E. 174 (1921).

20. See Flynn v. Board of Registration in Optometry, 320 Mass. 29, 67 N.E.2d 846, 850, 166 A.L.R. 571 (1945). In speaking of a statute which prohibited stays of license suspension where various occupations were concerned, the court said: "The Legislature may have thought that the professions and callings to which this statute was applicable were such that the public health, safety, and welfare might be protected better if a stay were forbidden."

Nor would the granting of a stay make license forfeiture futile as to those individuals who, at the end of the summer salmon season, spend the fall and winter months engaged in commercial fishing for crab and other shellfish. Appellee Al Martin was one of these persons. He was master of a fishing vessel scheduled to engage in commercial crab fishing in the Kodiak area commencing in the fall of 1961. The forfeiture of Martin's license would be a penalty he would feel, whether it took effect at the time of conviction in October 1961, or later in the year while he was crab fishing.

If the denial of a stay is justified because certain commercial fishermen might avoid the impact of a license forfeiture by the process of appeal, this is no justification for denying stays to those persons who cannot escape the force of that penalty.

The latter are deprived of an important right solely from the circumstance of being associated, by reason of the nature of their occupation, with those commercial fishermen who have caused the legislature to act as it did. It is basically unfair to impose a special burden on a class of persons whose activities have no relation to the purpose of the law. Those persons ought to have the same right to seek a stay of license forfeiture pending appeal as do other persons engaged in licensed occupations. When the former are not afforded that right, they are deprived of equal rights, opportunities and protection under the law. We conclude that chapter 112, to the extent that it prohibits the granting of stays pending appeal, is unconstitutional because it violates art. I, § 1 of the state constitution.

The judgment is affirmed.