George W. VAN BRUNT, Jacqueline R. Bennett, and Joseph A. Bowman, Appellants,

v.

STATE of Alaska, Appellee.

Nos. 6046, 6064 and 6189.

Court of Appeals of Alaska.

June 25, 1982.

Marc W. June and Paul H. Grant, Birch, Horton, Bittner, Monroe, Pestinger & Anderson, Anchorage, for appellants.

John A. Scukanec, Asst. Atty. Gen., Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

OPINION

Before BRYNER, C. J., and COATS and SINGLETON, JJ.

COATS, Judge.

George W. Van Brunt, Jacqueline R. Bennett, and Joseph A. Bowman were charged in separate two-count informations with operating a motor vehicle while under the influence of intoxicating liquor, AS 28.35.030(a)(1), and with operating a motor vehicle with a blood or breath alcohol level in excess of the 0.10 standard, AS 28.35.030(a)(2).[1] Juries found Van Brunt and Bennett guilty on both counts and Bowman entered a *Cooksey* plea of *nolo contendere* to the charge of driving with a blood alcohol level in excess of the 0.10 standard in exchange for a dismissal of the second count. *Oveson v. Municipality of Anchorage*, 574 P.2d 801, 803 n.4 (Alaska 1978); *Cooksey v. State*, 524 P.2d 1251 (Alaska 1974).

All three appeal on the ground that AS 28.35.030, as amended by the 1980 Alaska Legislature, was enacted in violation of the Alaska Constitution. Further, Van Brunt and Bennett each appeal on the ground that the trial court erred in refusing to instruct the jury as to a *mens rea* element of the offense of driving while intoxicated.

■ We address the appellants' *mens rea* argument first. It is their contention that before a person may be convicted of driving while intoxicated the state must show that the driver was on notice of the fact that he was intoxicated within the eyes of the law, i.e., that he was actually under the influence of alcohol or that his blood or breath alcohol level was in excess of 0.10. We find little merit in this contention. In *Morgan v. Municipality of Anchorage*, 643 P.2d 691 (1982), we held that all that need be shown in order to secure a conviction for driving while intoxicated on an under the influence theory is that the defendant intentionally drank and intentionally drove; it need not be shown that the defendant knew that he was in fact under the influence of intoxicating liquor. In accordance with our holding in *Morgan*, we therefore find against the appellants on this point of their appeal and hold that it need not be shown that they actually knew that they were under the influence of intoxicating liquor or that their blood or breath alcohol levels were in excess of 0.10. The fact that they intentionally drank and drove is sufficient to support their convictions.

Appellants also challenge AS 28.35.030 itself, alleging that it was enacted in violation of the Alaska Constitution.[2] First, the

1. AS 28.35.030(a) provides:
   A person commits the crime of driving while intoxicated if he operates or drives a motor vehicle
   (1) while under the influence of intoxicating liquor, depressant, hallucinogenic, stimulant or narcotic drugs as defined in AS 17.10.230(13) and AS 17.12.150(3);
   (2) when there is 0.10 percent or more by weight of alcohol in his blood or 100 milligrams or more of alcohol per 100 milliliters of his blood, or when there is 0.10 grams or more of alcohol per 210 liters of his breath; or
   (3) while he is under the combined influence of intoxicating liquor and another substance.

2. The current version of AS 28.35.030 went into effect on September 28, 1980, by virtue of the provisions of ch. 129, § 10, SLA 1980. To summarize briefly the legislative history of this enactment:
   On January 25, 1980, Senate Bill 365 (SB 365) was introduced before the Alaska State Senate. The bill was entitled, "An act imposing penalties on persons who deal in intoxicating liquors without a license." It added a new section to Title 4 (Alcoholic Beverages) of the Alaska Statutes, and it altered the wording of a second section. On February 1, 1980, the senate passed the bill and sent it to the house.
   Following a February 4, 1980, reading of the bill, the house referred it to the House Judiciary Committee. The committee expanded the bill,

appellants argue that by passing a bill involving provisions relating both to Title 4, involving the sale of alcohol, and to Title 28, involving driving while intoxicated, the legislature violated the one-subject rule of article II, section 13, of the Alaska Constitution. In pertinent part, that section reads:

> *Form of Bills.* Every bill shall be confined to one subject unless it is an appropriation bill or one codifying, revising, or rearranging existing laws.

The purpose of the one-subject rule is to guard against legislative log-rolling and the attendant danger of "inadvertence, stealth and fraud in legislation." *Suber v. Alaska State Bond Committee*, 414 P.2d 546, 557 (Alaska 1966); *see also Gellert v. State*, 522 P.2d 1120, 1122 (Alaska 1974). The goal is "to prevent the inclusion of incongruous and unrelated matters in the same bill in order to get support for it which the several subjects might not separately command." *Suber v. Alaska State Bond Committee*, 414 P.2d at 557.

To further these policies, the one-subject rule mandates a limitation on the matters that can be properly addressed by a single bill. The Alaska Supreme Court, however, has construed this limitation quite broadly. In *Gellert*, the court held that, "Ultimately

the decision in cases of this kind must be made on a basis of practicality and reasonableness." *Gellert v. State*, 522 P.2d at 1123. Accordingly, the *Gellert* court held that the one-subject rule required only that an act "embrace some one general subject." *Id., quoting, Johnson v. Harrison*, 47 Minn. 575, 50 N.W. 923, 924 (1891). In *Short v. State*, 600 P.2d 20, 24 (Alaska 1979), the Alaska Supreme Court expanded on its pronouncement in *Gellert*:

> [T]he *Gellert* test requires no more than that the various provisions of single legislative enactment fairly relate to the same subject, or have a natural connection therewith.

■ In applying these holdings to the instant case, we think it can be fairly said that the legislation is essentially limited to one general subject, namely, intoxicating liquor. In *Gellert*, the court declared:

> [The one-subject rule] should however, be construed with considerable breadth. Otherwise statutes might be restricted unduly in scope and permissible subject matter, thereby multiplying and complicating the number of necessary enactment and their interrelationships.

*Gellert v. State*, 522 P.2d at 1122; *see also Short v. State*, 600 P.2d at 23; *Suber v.*

---

providing for local elections to decide whether the importation, possession, or sale of liquor would be allowed in individual Alaskan communities. The expanded bill also provided for local elections to decide whether the law concerning importation of liquor should be different during holidays. Further, the committee version of the bill included provisions defining intoxicating liquor, setting penalities for unlawful sale, possession, or importation of liquor, and authorizing the seizure, forfeiture, and sale of aircraft, vehicles, or vessels used in illegal trafficking.

The house passed this version of the bill on June 2, 1980, and sent it to the senate for consideration. On June 3, 1980, the senate failed to agree to the amendments made by the house. The house, in turn, refused to recede from the amendments, and a free conference committee (consisting of three members of the house and three members of the senate) was appointed.

The free conference committee left the house amendments to SB 365 intact and added four additional sections to the bill. These four sections altered the criminal statutes of Title 28

(Motor Vehicles) which prohibited driving while under the influence of intoxicating liquor. This Free Conference Committee Substitute for SB 365 (FCCSSB 365) was accordingly entitled, "An act relating to local option laws concerning intoxicating liquor, operating or driving a motor vehicle while under the influence of intoxicating liquor, and establishing penalties for violations of liquor laws." On June 5, 1980, both the senate and the house adopted the bill.

On June 6, 1980, the bill (FCCSSB 365) was sent to the governor for his signature. A few hours before the passage of FCCSSB 365, however, FCCSSB 239 was passed by both houses of the legislature. Both of these bills dealt with Title 4, and in this respect, they were in conflict. Pursuant to a series of opinion letters from the attorney general, Governor Hammond signed FCCSSB 365 first so that the subsequent signing and enactment of FCCSSB 239 would repeal all of the inconsistent provisions of FCCSSB 365. As a net result, the only portions of FCCSSB 365 to survive were those provisions, introduced by the free conference committee, that amended the laws of Title 28.

*Alaska State Bond Committee*, 414 P.2d at 557. In light of this deferential standard, we conclude that the statute at issue here is a valid enactment encompassing only one subject even though it did address different aspects of liquor regulation (sale and drunk driving).[3] Furthermore, we see no valid objection to the legislation based on the policies to be served by the one-subject rule.[4] Accordingly, we refuse to invalidate AS 28.35.030 on the grounds that it was enacted in violation of the one-subject rule.

The appellants raise two other interrelated constitutional challenges to the enactment of AS 28.35.030. Simply stated, they contend that the free conference committee exceeded its authority in amending the bill to the extent that it did and that the legislature failed to read the amended bill three times as required by article II, section 14, of the Alaska Constitution.[5] We have examined these issues and have determined that they are not appropriate for resolution by this court. We therefore certify these issues to the Alaska Supreme Court for decision. See AS 22.05.015(b).[6]

The judgment appealed from is AFFIRMED in part and the issues specified are CERTIFIED to the supreme court for decision.

**3.** Such a conclusion comports with the general thrust of the guiding case law, for the Alaska Supreme Court has never voided a statute as violative of the constitutional one-subject rule. *See State v. Short*, 600 P.2d 20 (Alaska 1979) (authorization of bond sales for the construction of correctional facilities and public safety facilities upheld on the ground that both served the general public safety function of protecting life and property); *North Slope Borough v. Sohio Petroleum Corp.*, 585 P.2d 534 (Alaska 1978) (legislation involving municipal and state taxation upheld since both are often inextricably intertwined); *Gellert v. State*, 522 P.2d 1120 (Alaska 1974) (flood control and small boat harbor projects could properly be incorporated into a single bill since both were part of a cooperative water resources development program); *Suber v. Alaska State Bond Committee*, 414 P.2d 546 (Alaska 1966) (a single piece of legislation could provide for both mortgage relief to those whose homes were damaged in the earthquake and criminal sanctions to assure good faith compliance with those provisions).

**4.** It does not appear that the form of the bill served to achieve the passage of any section of the bill without the legislature's awareness. Further, it does not appear that the passage of any section of the bill was achieved by logrolling it past the legislature by means of attaching it to another popularly supported section.

**5.** Alaska Const. art. II, § 14 provides in part:

*Passage of Bills.* The legislature shall establish the procedure for enactment of bills into law. No bill may become law unless it has passed three readings in each house on three separate days, except that any bill may be advanced from second to third reading on the same day by concurrence of three-fourths of the house considering it.

**6.** AS 22.05.015(b) states:

The supreme court may take jurisdiction of a case pending before the court of appeals if the court of appeals certifies to the supreme court that the case involves a significant question of law under the constitution of the United States or under the constitution of the state or involves an issue of substantial public interest that should be determined by the supreme court.

Our decision to certify these issues to the supreme court is predicated upon a number of considerations. These are issues of first impression concerning a matter (legislative processes) not technically within the area of our expertise (criminal law). The potentially widespread impact on an unknown quantity of legislation, much of it civil in nature, suggests to us the need for a decision directly from the supreme court.