**Brian GALBRAITH, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–197.

Court of Appeals of Alaska.

Jan. 18, 1985.

Charles R. Pengilly, Asst. Public Defender, Fairbanks, and Dana Fabe, Public Defender, Anchorage, for appellant.

John A. Scukanec, Asst. Atty. Gen., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Brian Galbraith was convicted of attempted kidnapping and given the class A felony presumptive sentence of five years. AS 12.55.125(c)(1). Galbraith appeals, arguing that he should have been sentenced as a class B offender. He contends alternatively that the applicable presumptive sentencing provisions were improperly enacted in Chapter 143, SLA 1982. We affirm.

In November 1982, Galbraith came up behind T.M. in a store parking lot, placed a hard object against her lower back, and told her to get in her car. She turned around, and seeing a complete stranger, she backed away screaming, "No." She told him he could take her car which was unlocked and running. He continued to walk toward her. She turned and ran. When she looked back, she saw him jogging off in the other direction. Galbraith was picked up a few days later on an unrelated incident and a police officer noted his close resemblance to the composite drawing prepared from T.M.'s description. T.M. identified Galbraith in both a photographic and a live lineup. After a jury trial, he was convicted of kidnapping and assault in the fourth degree.[1]

### A. Classification of Attempted Kidnapping

Galbraith bases his argument that he should have been sentenced as a class B felony offender, rather than as a class A felony offender, on an ambiguity he perceives in the kidnapping statute. AS 11.41.300(a)(1)(C) provides that a kidnapping occurs when a person "restrains another with intent to ... inflict physical injury upon or sexually assault the restrained person." AS 11.41.300(c) states that "[e]xcept as provided in (d) of this section, kidnapping is an unclassified felony and is punishable as provided in AS 12.55." Section (d) provides that:

> In a prosecution for kidnapping, it is an affirmative defense which reduces the crime to a class A felony that the defendant voluntarily caused the release of the victim alive in a safe place before arrest, or within 24 hours after arrest, without having caused serious physical injury to the victim and without having [sexually assaulted the victim].

Reading sections (c) and (d) together, Galbraith concludes that kidnapping is either a class A felony or an unclassified felony depending upon the circumstances of the crime. Presently the general attempt statute, AS 11.31.100(d), states that "[a]n attempt is a (1) class A felony if the crime attempted is an unclassified felony; (2) a class B felony if the crime attempted is a class A felony." Thus, Galbraith reasons, attempted kidnapping could be either a class A or a class B felony depending on whether the kidnapping would have been an unclassified or a class A felony if completed. Since the kidnapping was not completed, Galbraith argues he might have mitigated the crime so as to qualify for the affirmative defense. Consequently, he believes that at most he should have been given the class B felony offender presumptive sentence. The state argues that attempted kidnapping is always a class A felony and that section (d) does not apply to an attempt since the purpose of section (d) is to reduce the penalty for kidnapping, not to relieve the kidnapper of all liability. Supp. No. 47 at 20 in 2 Senate Journal (1978), following p. 1414.[2] However, we need go no further with either party's argument as both parties have premised their arguments on a reading of the wrong attempt statute.

The wording of AS 11.31.100(d) as it exists today is quoted above. However, in November 1982, when Galbraith attempted to kidnap T.M., AS 11.31.100(d)(1) read: "An attempt is a class A felony if the crime attempted is murder in any degree or kidnapping." The language of the statute was amended by § 10, Chapter 45, SLA

1. Galbraith was not sentenced on the assault in the fourth degree conviction. It was later set aside on double jeopardy grounds as a lesser-included offense of attempted kidnapping.

2. The legislature hoped to encourage release of kidnap victims unharmed by differentiating between classes of offenses on this basis. Given the inchoate nature of attempted kidnapping, it is possible that a defendant may not be able to show that the release of the victim unharmed was an intentional act on his part rather than simply a failure of the attempt. However, when the defendant can show that he released the victim voluntarily, the policy explaining the affirmative defense in section (d) might qualify this conduct as a relevant mitigating factor not specifically included in AS 12.55.155, *see* AS 12.55.165, which might warrant referral of a person convicted of attempted kidnapping to a three-judge panel. AS 12.55.175.

1982 at 50–51, which became effective January 1, 1983. Chapter 45 was entitled: "An Act Revising the drug laws and making amendments to the criminal laws of the state; and providing for an effective date." The Act created a new unclassified felony called "[m]isconduct involving a controlled substance in the first degree." AS 11.71.-010. *See* § 2, Chapter 45, SLA 1982 at 2. The drafters changed the language in the attempt statute as indicated above. *See* § 10, Chapter 45, SLA 1982 at 50–51. Presumably these changes were made to reflect the addition of another unclassified felony, first-degree misconduct involving a controlled substance, since murder in the first and second degree and kidnapping are all three unclassified felonies. *See* AS 11.-41.100(b); AS 11.41.110(b); AS 11.41.300(c). It is more convenient to refer to "unclassified" felonies in general rather than specifically listing each one. The generic term also avoids the problem of having to amend the attempt statute each time a new unclassified felony is created. *See, e.g.,* AS 11.-41.410, sexual assault in the first degree (changed from a class A felony to an unclassified felony in § 6, Chapter 143, SLA 1982 at 2); AS 11.41.434, sexual abuse of a minor in the first degree (created by § 2, Chapter 78, SLA 1983 at 1–2). There thus appears to have been no intent by the legislature to create a class B felony charge for attempted kidnapping.

▮ In any event, the Act did not become effective until January 1, 1983. *See* § 27, Chapter 45, SLA 1982 at 55. Generally, defendants are sentenced under the law existing at the time of the commission of the offense absent an expression of intent by the legislature to make the new law applicable to previously committed crimes. *See State v. Rastopsoff,* 659 P.2d 630, 633 n. 1 (Alaska App.1983); *Sundberg v. State,* 652 P.2d 113, 116 (Alaska App.1982); AS 11.81.200. *Accord* AS 01.05.021(b). Here, the legislature stated: "Prosecution for a violation of law occurring before January 1, 1983, is not affected or abated by this Act." *See* § 23, Chapter 45, SLA 1982 at 54. Under the law that existed in November 1982, attempted kidnapping was un-

questionably a class A felony. This is clear from the commentary to AS 11.31.100 which states:

> With four exceptions, the Code grades attempt one level below the substantive crime, *e.g.,* an attempt to commit a class A felony will be a class B felony. *Attempted first or second degree murder or attempted kidnapping are classified as class A felonies* while an attempt to commit a B misdemeanor is classified as a B misdemeanor.

Supp. No. 47 at 6 in 2 Senate Journal (1978), following p. 1414 (emphasis added). Galbraith was thus properly sentenced as a class A felony offender for the attempted kidnapping of T.M., and his sentence is affirmed.

### B. *The Constitutionality of Chapter 143, SLA 1982*

Galbraith's second argument is that the applicable five-year presumptive sentence provision of AS 12.55.125(c)(1) was unconstitutionally enacted. He makes a two-pronged attack on Chapter 143, SLA 1982. First, he argues that the Alaska Constitution, article II, § 14 requirement that the exact same bill be passed by both houses was violated. Second, he argues that the bill violates the one-subject rule of the Alaska Constitution, article II, § 13. In order to understand fully his arguments, it is helpful to go through the legislative history of Chapter 143, SLA 1982.

#### i. Legislative History of Chapter 143, SLA 1982

Chapter 143, SLA 1982 is entitled "An Act Relating to criminal law and procedure and amending the revised criminal code; changing Rule 37, Rules of Criminal Procedure and Rule 901, Alaska Rules of Evidence." This bill started out in the Senate as SB 535. *See* 2 Senate Journal 929 (1981). After the Senate Judiciary Committee reviewed and amended the bill, it passed the Senate on a 12–5–3 vote and was sent to the House. *See* 2 Senate Journal 716 (1982).

In the House, the bill, now called CSSB 535, underwent additional changes in the House Judiciary Committee, and became HCS CSSB 535 (2d Jud). *See* 3 House Journal 2287 (1982). Sections 43–45 noted that three other sections of the bill had the effect of changing court rules.[3] These notations are required by article IV, section 15 of the Alaska Constitution and Rule 39(e) of the Uniform Rules of the Alaska Legislature.[4] The House passed the bill, including some amendments on a 22–17 vote. *See* 3 House Journal 2314–15 (1982). The bill was now designated as HCS CSSB 535 (2d Jud) am H to reflect that several amendments proposed on the House floor had been adopted by the House. The House then took a separate vote on the three rule changes in sections 43–45. It passed sections 43 and 45, but not section 44. *See* 3 House Journal 2315–16 (1982). Section 44 was thus deleted, and section 45 was renumbered section 44. *See* 2 Senate Journal 1703 (1982). The bill was then returned to the Senate. The Senate voted to concur in the House amendments by a 13–6–1 vote. *See* 2 Senate Journal 1704 (1982). The Senate Journal entry immediately following the Senate's vote to concur in the House amendments notes that "the Senate concurred in the House amendments, thus passing, *HOUSE CS FOR CS FOR SENATE BILL NO. 535 (2d JUD) am H....*" *See* 2 Senate Journal 1704 (1982)

3. Section 43 of HCS CSSB 535 (2d Jud) noted that section 18 of the bill had the effect of changing Rule 37 of the Rules of Criminal Procedure by authorizing telephonic search warrants. Section 44 noted that section 27 of the bill had the effect of changing Rule 35(a), (b), and (k) of the Alaska Rules of Criminal Procedure by limiting the time in which a sentence could be modified under AS 12.55.088(a). Section 45 noted that section 40 of the bill had the effect of changing Rule 901 of the Alaska Rules of Evidence by specifying requirements for the authentication of photographic evidence of property unlawfully taken or damaged. 3 House Journal 2358 (1982).

4. Article IV, section 15 of the Alaska Constitution provides:

The supreme court shall make and promulgate rules governing the administration of all courts. It shall make and promulgate rules governing practice and procedure in civil and criminal cases in all courts. These rules may be changed by the legislature by two-thirds vote of the members elected to each house. The Alaska Supreme Court has stated that "[t]he object of [the two-thirds requirement] is to prevent unintentional, rash, ill-considered and too easy intervention by the legislature which would ultimately frustrate the sound purpose in giving courts the primary authority and responsibility for regulating their own affairs." *Leege v. Martin,* 379 P.2d 447, 450 (Alaska 1963). The court then held that:

As a matter of reason and necessity and in order to give article IV, section 15 of the constitution a practical working interpretation, we must hold that a legislative enactment will not be effective to change court rules of practice and procedure unless the bill specifically states that its purpose is to effect such a change [and the bill is supported by two-thirds of the members of each house].

379 P.2d at 451 (footnote omitted).

The legislature subsequently adopted Rule 39(e) of the Uniform Rules of the Alaska State Legislature. That rule provides:

If a bill or portion of a bill contains matter changing a supreme court rule governing practice and procedure in civil or criminal cases, the bill must contain a section expressly citing the rule and noting what change is being proposed. The section containing the change in a court rule must be approved by an affirmative vote of two-thirds of the full membership of each house. If the section effecting a change in the court rule fails to receive the required two-thirds vote, the section is void and without effect and is deleted from the bill. The fact that a bill contains a section which changes a court rule shall also be noted in the title of the bill.

We note here that Rule 39(e) goes further than *Leege v. Martin,* as *Leege* does not indicate that statutes purporting to change court rules but not receiving a two-thirds majority in each house are void unless they meet its terms. Rather, it indicates that they are simply ineffective to change the court rules, but remain effective legislation to the extent that they do not conflict with existing court rules and to the extent that they deal with subjects unrelated to court rules. Thus where legislation purports to change court rules but is ineffective for that purpose, AS 01.10.030 comes into play. That section provides:

Any law heretofore or hereafter enacted by the Alaska legislature which lacks a severability clause shall be construed as though it contained the clause in the following language, "If any provision of this Act, or the application thereof to any person or circumstance is held invalid, the remainder of this Act and the application to other persons or circumstances shall not be affected thereby."

(emphasis in original). The Act was then sent to the governor. On July 7, 1982, Governor Hammond signed the Act into law as Chapter 143. In his transmittal letter, Governor Hammond noted that sections 43 and 44, dealing with the changes in court rules, were void as they had not received the required two-thirds majority vote in the Senate. *See* 2 Senate Journal 1787–88 (1982).

### ii. Effect of the Senate's Failure to Vote on Court Rule Changes

■ Galbraith's first argument is that, because sections 43 and 44 did not receive the required two-thirds majority vote by the Senate, the entire bill failed. Article II, section 14 of the Alaska Constitution provides in relevant part: "No bill may become law without an affirmative vote of a majority of the membership of each house." AS 24.30.090 states the same requirement. Galbraith reasons that due to the failure of the Senate to vote separately on the court rule changes, the same bill did not receive a majority vote in each house. In support of this contention, Galbraith raises several arguments. We deal with each of them in order.

First, Galbraith states that from a purely physical perspective the two bills are different. The bill passed by the House had forty-five sections, whereas the bill passed by the Senate had forty-three as a result of the effect of Uniform Rule 39(e), which states that when a provision fails to receive the requisite two-thirds vote, it is deleted from the bill. However, this argument ignores the fact that a vote to adopt or reject a rule change is treated by the legislature as an appendix to its earlier vote to pass a

bill, so that it has absolutely no effect on the prior vote of passage. When section 44 did not pass the House, the provision was merely deleted from the bill without another vote being taken to pass the bill again. It would be wasted effort for the Senate first to vote to concur in the House amendments and then to vote on the rule changes if Galbraith's argument were correct. If the failure to obtain a two-thirds majority vote on the rule change invalidated a prior majority concurrence in the bill itself, the legislature would always vote first to adopt the rule change; only then, if the rule change passed by a two-thirds vote, would it vote to pass a bill. However, the practice of the legislature is exactly the opposite.

■ Second, Galbraith argues that the effect of the bills passed by the two houses is different. He bases this argument on the premise that the version passed by the House would effectively change the court rules whereas the version passed by the Senate would not. However, this premise is incorrect, as there was only one version of the bill that went to Governor Hammond, that is, a version which did not change the court rules. Article IV, section 15 of the Alaska Constitution states that court rules may be changed by the legislature by two-thirds vote of the members elected to each house. It does not state that the rules may be changed by a two-thirds vote of one house.[5]

Third, Galbraith challenges Governor Hammond's analogy of the failure to take a separate vote on the court rule changes to the failure to adopt a special effective date

---

5. Specifically, Galbraith argues that section 18 of Chapter 143 is inconsistent with Alaska Rule of Criminal Procedure 37 in that it went far beyond what was accomplished in Supreme Court Order No. 505 amending Rule 37 to allow for the issuance of telephonic search warrants. He also contends that section 40 of Chapter 143 is inconsistent with Evidence Rule 901 in that Evidence Rule 901 may be satisfied by information different from the specific information required by section 40. To the extent sections 18 and 40 were in conformity with the court rules, a two-thirds vote was not required on sections 43 and 44 (which were the two sections noting

the changes in the court rules made by sections 18 and 40, *see supra* footnotes 3 and 4 and accompanying text), as such a vote is only necessary when a statute is in conflict with a court rule. *See Nolan v. Sea Airmotive, Inc.,* 627 P.2d 1035, 1040 (Alaska 1981), *citing Matanuska Maid, Inc. v. State,* 620 P.2d 182, 188 (Alaska 1980). However, to the extent the provisions of section 18, enacted as AS 12.35.015, and section 40, enacted as AS 12.80.050, conflict with Alaska Rule of Criminal Procedure 37 and Evidence Rule 901, respectively, the existing rules of court control. Any inconsistencies do not invalidate the entire Act.

for a bill.[6] Uniform Rule 39(f) discusses the passage of special effective dates in language virtually identical to that of Rule 39(e) dealing with the passage of changes to court rules, as Rule 39(f) states in pertinent part: "If a section setting out an effective date fails to receive the required two-thirds vote, in either house, the section is void and without effect and is deleted from the bill." *Compare* Rule 39(e), *supra* note 4. Galbraith argues that this comparison fails because the date on which an enacted bill becomes law is not a substantive change whereas a failure to adopt court rule changes is substantive. Galbraith further reasons that the effect is like an amendment deleting a provision and that "no one would argue that an amendment would not require concurrence of the other house." This argument also rests on the erroneous premise that the House version of the bill effectively changed the court rules whereas the Senate version did not. Under both Rules 39(e) and 39(f) the two-thirds vote to adopt the court rule change or an effective date is treated as independent from the majority vote on passage. The failure of either the effective date or the rule change section has no effect on a prior majority vote to pass the bill. Furthermore, in order to avoid the very argument made by Galbraith, the rules clearly provide that the effective date or the rule change provision is deleted from the bill if that section fails in either house.

### iii. Impact of the One-Subject Rule

■ Galbraith's next argument against Chapter 143, SLA 1982 is that the bill violates the one-subject rule of the Alaska Constitution, article II, § 13. Article II, section 13 of the Alaska Constitution states that "[e]very bill shall be confined to one subject." The supreme court has held that the purpose of this constitutional provision is "to guard against legislative log-rolling and the attendant danger of 'inadvertence, stealth and fraud in legislation.'" *Van Brunt v. State*, 646 P.2d 872, 874 (Alaska App.1982), *quoting Suber v. Alaska State Bond Committee*, 414 P.2d 546, 557 (Alaska 1966). Galbraith lists the several "main" subjects included in Chapter 143,[7] and concludes that the only thing that holds these provisions together is that each deals with the subject of criminal law. He argues that these topics "are as diverse as if the legislature were to pass a bill dealing with government contracts, personal injury liability, taxation, and natural resources, and classify the bill as falling under the 'one subject' of civil law."

In support of this contention, Galbraith cites *State v. Hailey*, 505 S.W.2d 712 (Tenn.1974), where the court struck down an act which dealt with various criminal

6. In discussing the impact of the Senate's failure to vote on the rule changes, Governor Hammond stated in his transmittal letter:

The issue that is presented is very similar to one which has arisen when one house votes to concur in amendments made by the other house, but then fails to adopt, for example, an immediate effective date included in the bill by a two-thirds vote as required by Rule 39(f). The procedure specified in Rule 39(e) pertaining to votes on court rule changes is virtually identical to the language in Rule 39(f) pertaining to votes on special effective date clauses. There is ample authority in support of the rule that a failure to adopt a special effective date by a two-thirds vote after concurring in a bill by a majority vote means that the bill has been adopted with an ordinary 90–day effective date. This authority rests on a construction of the effective date as not being a material factor influencing the favorable vote. This rule should apply by analogy to the failure of the Senate to vote separately on the

rule change provisions in this bill. [C]onsequently, I have concluded that HCS CSSB 535 (Jud) am H [sic] has been adopted by the legislature but without the effect of changing the court rules cited in sec. 43 and 44.

2 Senate Journal 1788 (1982).

7. Galbraith's list is as follows:

[T]he reclassification of sexual assault in the first degree; the rewriting of assault law to eliminate the defense of intoxication; establishing presumptive sentences for all class A felony offenders; the issuance of telephonic search warrants; the modification of procedures for disposal of seized and recovered property; the complete modification of the insanity defense; the modification of the defense of necessity; the reclassification of second offense joyriding; the legitimation of use immunity; and substantial modifications to the manner in which sentences are imposed and modified.

law topics on the ground that it violated the Tennessee constitutional provisions limiting laws to one subject. However, Alaska courts have construed the one-subject rule much more broadly than have Tennessee courts. In *State v. First National Bank of Anchorage*, 660 P.2d 406 (Alaska 1982), a bill dealing both with amendments to the Uniform Land Sales Practices Act and with amendments to the Alaska Land Act, concerning the leasing of state-owned land and the Division of Lands' zoning authority, was upheld as "land" was found not to be an unduly broad subject. In *Van Brunt v. State*, 646 P.2d 872 (Alaska App. 1982), this court held that an amendment which changed a DWI statute was germane to a bill to change various state liquor laws since both dealt with "intoxicating liquor." In *Van Brunt*, we collected a number of cases in which the Alaska Supreme Court did not void statutes as violative of the one-subject rule. *Id.* at 875 n. 3. Alaska courts have repeatedly stressed that the one-subject rule should "be construed with considerable breadth. Otherwise statutes might be restricted unduly in scope and permissible subject matter, thereby multiplying and complicating the number of necessary enactments and their interrelationships." *Gellert v. State*, 522 P.2d 1120, 1122 (Alaska 1974);[8] *see also Short v. State*, 600 P.2d 20, 24 (Alaska 1979) ("the *Gellert* test requires no more than that the various provisions of single legislative enactment fairly relate to the same subject, or have a natural connection therewith"); *Suber v. Alaska State Bond Committee*, 414 P.2d 546, 557 (Alaska 1966) (to warrant setting aside the enactment, violation of the one-subject rule must be "substantial and plain"). In light of these cases, it appears that there is no violation of the one-subject rule.

### iv. Log-rolling

Galbraith's final contention is that Chapter 143 was the product of log-rolling, *i.e.*,

it included unpopular provisions which were passed by the legislature only because they were attached to other popularly supported sections. He refers to the fact that several sections of the bill came from six prior bills which had not passed the Senate.

No constitutional provision expressly prohibits log-rolling. To the extent that the one-subject rule seeks to limit log-rolling, past decisions of our supreme court have approved much more egregious combinations of issues than are found in Chapter 143, SLA 1982. There is no question that the members of the legislative bodies were aware of the exact contents of the statutes they were enacting. A commentary was prepared summarizing the effect of each section in Chapter 143 and expressing the legislature's intent on particular issues. *See* Supp. No. 64 in 3 House Journal (1982), following p. 2356. The commentary was distributed to the members of the House before they voted to pass the bill. After the House voted to pass the bill, a separate vote was taken to adopt the accompanying commentary. *See* 3 House Journal 2318 (1982). The Senate also unanimously adopted the commentary after concurring in the House amendments. *See* 2 Senate Journal 1720 (1982). It thus appears that both houses were aware of the effect of the bill they were passing and intended to make all the changes included in it.

Chapter 143, SLA 1982 does not violate the Alaska Constitution and is not a product of log-rolling. Therefore, Galbraith's five-year presumptive sentence is constitutional, and the judgment of the superior court is AFFIRMED.

---

8. In *Gellert,* the trial court found no connection between flood control projects in Fairbanks and small boat harbors in southeastern Alaska but nevertheless upheld a bill funding both on the theory that both items were public works financed through the issuance of bonds. The supreme court disagreed, finding a nexus, since both projects involved water resource development financed in part with funds derived from a single federal agency. 522 P.2d at 1123.